Timothy Orville JARVIS, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 96–SC–1109–MR.

Supreme Court of Kentucky.

Jan. 22, 1998.

Paul J. Neel, Jr., Appellate Public Advocate, Louisville, for Appellant.

A.B. Chandler, III, Attorney General, Paul D. Gilbert, Assistant Attorney General, Criminal Appellate Division, Frankfort, for Appellee.

JOHNSTONE, Justice.

On May 3, 1995, Timothy Orville Jarvis killed his wife Angela, with a lock blade knife. Angela was killed by a single stab wound to her throat. C.J., the couple's three-and-a-half-year-old daughter, witnessed her mother's death. A jury of his peers found Jarvis guilty of wanton murder. He was subsequently sentenced to thirty years in prison. He appeals to this Court as a matter of right. We affirm.

Jarvis raises a number of issues on appeal. While we agree with Jarvis on two of his assignments of error, we find that these errors were harmless both individually and cumulatively. Because one of these two errors is derivative of Jarvis's first assignment of error, we begin our discussion of this case with his first argument.

## I. COMPETENCY OF C.J. TO TESTIFY

Jarvis argues that the trial court erred when it found C.J., who was five at the time of trial, competent to testify. The determination of the competency of witnesses is within the sound discretion of the trial court. *Wombles v. Commonwealth*, Ky., 831 S.W.2d 172, 174 (1992). Unless there is a clear abuse of discretion, the trial court's ruling on the competency of a witness will not be disturbed on appeal. *Pendleton v. Commonwealth*, Ky., 685 S.W.2d 549, 551 (1985). We have reviewed the record and find no abuse of discretion.

The trial court held an in limine hearing to determine whether C.J. was competent to testify. The prosecutor asked C.J. a series of questions that are very similar to those cited with approval by the Northern Kentucky Advisory Committee for Child Witnesses. *See* Susan Asquith, *The Child Witness: Accommodating the Special Needs in the Courtroom: A Guide for Attorneys and Judges on Implementation of KRS 26A.140*, 1997, Appendix B. During the competency hearing, C.J. testified that she knew where she went to school, that she was in kindergarten, who she lived with, and what her age was. However, she also testified that she did not remember her last birthday, that she did not know where she lived, or who brought her to court that day. She testified that her grandmother had told her to tell the truth. She demonstrated that she knew the difference between telling the truth and telling lies in response to a number of hypothetical questions. She testified that it was bad to tell lies. She affirmed that she was supposed to tell only the truth at trial. She stated that when she did not know an answer, she would respond by saying, "I don't know." The

importance of the last response is the affirmance that C.J. would not guess at or fabricate an answer to a question she did not know in order to please her questioner.

■ Further weighing in favor of finding C.J. competent to testify was the subject matter of her testimony. "A child's competency varies according to both her developmental level and the subject matter at hand." Asquith, *supra,* at section II–2. At trial, C.J. testified that she saw her father throw a knife at her mother. This testimony involved a single item, a single act, and persons familiar to C.J. The occurrence or non-occurrence of this sort of act normally would be more within a young child's understanding than would be the estimation of speed or numbers. *See* Robert G. Lawson, *The Kentucky Evidence Law Handbook,* § 3.05, p. 149 n. 22 (3d ed. 1993). The trial court did not abuse its discretion in finding C.J. competent to testify.

## II. HEARSAY

Jarvis next argues that C.J.'s testimony was improperly bolstered by the testimony of a number of the Commonwealth's witnesses. These witnesses were allowed to either repeat what C.J. had told them or what they had overheard C.J. tell someone else. At trial, Jarvis objected on hearsay grounds to the introduction of these statements. Thus, the grounds for error alleged on appeal differ from the grounds for error argued at trial. Therefore, this alleged error was not properly preserved for review by this Court. *See, e.g., Robey v. Commonwealth,* Ky., 943 S.W.2d 616, 618 (1997); *Commonwealth v. Duke,* Ky., 750 S.W.2d 432, 433 (1988). However, we do not believe that in this particular case we are likewise precluded from reviewing the alleged error on the grounds originally argued at trial.

■ At trial, the Commonwealth argued that C.J.'s out-of-court statements were admissible based on the prior in limine hearing to determine C.J.'s competency to testify. The trial court overruled Jarvis's objection on this ground. Clearly, the fact that the trial court previously found C.J. competent to testify is not grounds to support the admission of her prior consistent statements. The competency of her in-court testimony has nothing to do with the admissibility of her out-of-court statements. *Souder v. Commonwealth,* Ky., 719 S.W.2d 730, 733–34 (1986). On appeal, the Commonwealth argues that these statements were admissible as either present sense impressions or as excited utterances. We have long held that we will uphold a correct result made for the wrong reasons. *See, e.g., Commonwealth v. Congleton,* Ky., 267 Ky. 22, 101 S.W.2d 210 (1937). Our review of the record reveals that these statements do not fit either exception of KRE 803 to the general rule against hearsay of KRE 802 urged by the Commonwealth. KRE 803 provides in pertinent part:

> The following are not excluded by the hearsay rules, even though the declarant is available as a witness:
>
> (1) Present sense impression. A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter.
>
> (2) Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

### PRESENT SENSE IMPRESSION

■ There is a dearth of case law in this Commonwealth concerning the present sense impression exception of KRE 803(1). The language of the rule makes clear that time is an important element of the exception. This is born out in the commentary to FRE 803(1), upon which KRE 803(1) is based. "The underlying theory of [FRE 803(1) ] is that substantial contemporaneity of event and statement negative the likelihood of deliberate or conscious misrepresentation.... With respect to the *time element,* [FRE 803(1) ] recognizes that in many, if not most, instances precise contemporaneity is not possible, and hence a slight lapse is allowable." Fed.R.Evid. 803, Advisory Committee's Note (emphasis in original). In the instant case, the record does not reveal the time period between Angela's death and C.J.'s statements. Moreover, C.J. was not questioned

regarding the circumstances surrounding the making of the statements, and the witnesses testifying to the statements were only questioned generally as to the circumstances surrounding them. Questions concerning the circumstances in which the proffered statement was made aid in the evaluation of the statement. *Id.* Therefore, we find that the challenged statements were not admissible as present sense impressions under KRE 803(1).

### EXCITED UTTERANCES

■ The eight most significant criteria for determining whether a statement qualifies as an excited utterance are:

(i) lapse of time between the main act and the declaration, (ii) the opportunity or likelihood of fabrication, (iii) the inducement to fabrication, (iv) the actual excitement of the declarant, (v) the place of the declaration, (vi) the presence there of visible results of the act or occurrence to which the utterance relates, (vii) whether the utterance was made in response to a question, and (viii) whether the declaration was against interest or self-serving.

*Souder, supra* at 733. In *Smith v. Commonwealth*, Ky., 788 S.W.2d 266, 268 (1990), *cert. denied* 498 U.S. 852, 111 S.Ct. 146, 112 L.Ed.2d 112 (1990), we made clear that the above criteria do not pose a true-false test for admissibility, but rather only act as a guideline for consideration of admissibility. However, this does not relieve the Commonwealth of its obligation of proffering evidence to support a finding that C.J.'s statements are admissible as excited utterances.

■ At trial, the Commonwealth offered absolutely no evidence as to C.J.'s emotional state. Specifically, it offered no evidence as to her level of "excitement" at the time these statements were made. The Commonwealth did not establish the temporal lapse between C.J.'s statements and her mother's death. The Commonwealth did not establish whether the statements were made spontaneously or in response to questioning. The only evidence remotely supportive of the Commonwealth's position on appeal is testimony that placed C.J. outside her parent's home sometime subsequent to her mother's death.

On appeal, the Commonwealth argues that C.J. made these statements within fifteen minutes of her mother's death, and that they were made while under the stress and excitement of having witnessed the event. However, the Commonwealth does not cite us to any place in the record which establishes this time frame and, seemingly, the Commonwealth would have us simply infer C.J.'s mental state. While this inference is appealing, there is no evidence in the record to support it. An otherwise inadmissible hearsay statement simply cannot be admitted under the excited utterance exception without evidence or testimony to support a finding that "the declarant was under the stress of excitement caused by the event or condition." The Commonwealth has not shown that C.J.'s statements qualify as excited utterances.

### III. IMPROPER CHARACTER EVIDENCE

■ The Commonwealth called Rita McIntosh as a witness. McIntosh testified that she observed bruises on Angela days prior to her death. Her testimony that Jarvis was responsible for causing these bruises was excluded on hearsay grounds. The evidence of physical abuse should have likewise been excluded on relevancy grounds.

A line of cases from this Court holds that evidence of a pattern of abuse by a defendant against a victim is admissible in a murder trial, where the evidence of abuse is not too remote in time and the defendant does not deny causing the victim's death but rather defends on the grounds of accident, mistake, or some mental state that justifies a conviction of a lesser offense. *See, e.g., Smith v. Commonwealth*, Ky., 904 S.W.2d 220 (1995); *Matthews v. Commonwealth*, Ky., 709 S.W.2d 414 (1985), *cert. denied*, 479 U.S. 871, 107 S.Ct. 245, 93 L.Ed.2d 170 (1986); *Dye v. Commonwealth*, Ky., 477 S.W.2d 805 (1972). However, mere evidence that Angela had been physically abused without any proper evidence linking that abuse to the defendant is substantially more prejudicial than it is probative. The evidence of physical abuse should have been excluded under KRE 403.

■ The Commonwealth called Sherry Lawson as a witness. Lawson testified in part that just prior to Angela's death, she (Lawson) and Jarvis were going out to buy a controlled substance. She further testified that she informed Angela of this fact. However, the Commonwealth did not introduce any evidence that this proposed course of action played any part in Angela's death. The fact that Lawson and Jarvis had plans to go purchase a controlled substance was not introduced to show motive, intent, or malice. The evidence was only used to paint Jarvis in a bad light. The evidence should have been excluded under KRE 404.

■ The Commonwealth called Donnie Howard as a witness. Howard testified that Jarvis made threats to cut Angela's throat if she did not leave him (Jarvis) alone. Howard testified that Jarvis made these threats against Angela on two different occasions within three to four weeks prior to Angela's death. Evidence of Jarvis's previous threats was admissible for the purpose of establishing malice or intent to kill. *Rose v. Commonwealth*, Ky., 385 S.W.2d 202, 204 (1964). There was no error in the admission of Howard's testimony.

## IV. HARMLESS ERROR

■ The relevant inquiry under the harmless error doctrine "is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Fahy v. Connecticut*, 375 U.S. 85, 86–87, 84 S.Ct. 229, 230–31, 11 L.Ed.2d 171, 173 (1963). When Jarvis took the stand, he confirmed that he threw a knife "overhand" at Angela in the same manner described by C.J. herself. Moreover, his testimony did not materially contradict any of the statements made by C.J. or attributed to her. Further, Jarvis testified that he had beaten Angela in the past, that a domestic violence order (DVO) had been served on him ordering him to stay away from Angela, and that he had beaten Angela after the DVO had been served. Thus, the introduction of C.J.'s hearsay testimony and the evidence of prior abuse was substantially corroborated by Jarvis himself and was harmless error. This leaves Lawson's testimony that she and Jarvis were planning to purchase a controlled substance as the only possible remaining reversible error.

■ Jarvis's own testimony of the events leading up to Angela's death was that he had been angry with Angela, that they had been arguing, and that he had thrown a knife at her in anger. The medical examiner testified that the knife blade measured four and one-half inches to its first hilt and that the wound to Angela's throat was likewise four and one-half inches long. He further testified that the knife blade followed a path down her throat and pierced a lung and cut a major artery. Lawson testified that she heard Angela scream, "Please God, Tim don't hurt me!" just prior to Angela's death. In light of this and other evidence, there was not a reasonable probability that the testimony involving controlled substances contributed to Jarvis's conviction for wanton murder.

## V. Judicial Conduct

■ Jarvis argues that the trial court made a number of statements that were prejudicial and deprived him of a fair trial. The remarks pointed out by Jarvis were either not improper or they were not so prejudicial so as to deny Jarvis a fair trial. We find that only one of the alleged improper statements merits discussion.

Over Jarvis's objection, the trial judge read Counts I and II of the indictment to the jury during voir dire. The grounds for the objection was that there was a pending motion to dismiss Count II. Count II of Jarvis's indictment was later dismissed. Subsequent to dismissal, the trial judge gave defense counsel the option of either informing the jury that Count II had been dismissed or simply proceeding with the trial without mentioning it. Defense counsel chose the former.

Jarvis cites to *U.S. v. Sivils*, 960 F.2d 587 (6th Cir.1992), *cert. denied*, 506 U.S. 843, 113 S.Ct. 130, 121 L.Ed.2d 84 (1992), as authority on this issue. In *Sivils*, Count IV was severed from the defendant's indictment. Subsequent to severance, the trial court made two references to Count IV during voir dire. *Id.* at 597. Applying a manifest error stan-

dard to the trial court's conduct during voir dire, the *Sivils* Court found that it was error to refer to Count IV, but that the error was harmless. *Id.* In the instant case, Count II had not yet been dismissed when the trial court read Jarvis's entire indictment. Thus, the instant case is factually distinguishable from *Sivils,* and *Sivils* does not stand for finding error in this case.

Jarvis cites us to no authority holding that a motion to dismiss one or more of the charges contained in an indictment, requires a trial court to withhold reading the indictment to the jury until after the trial court has ruled upon the motion to dismiss. The closest Kentucky case on point is *Stark v. Commonwealth,* Ky., 828 S.W.2d 603 (1991), in which we addressed the issue of whether it was "error for the trial court to dismiss charges without explanation to the jury inasmuch as the judge discussed each count of the indictment during voir dire?" *Id.* at 608. The issue was not preserved, and the *Stark* Court found no manifest injustice or palpable error. *Id.* at 608. Thus, any possible error under *Stark* was removed when the trial court explained to the jury that Count II of the indictment had been dismissed.

 Kentucky case law reveals that a trial court is given considerable discretion in conducting voir dire. *See, e.g., Moss v. Commonwealth,* Ky., 949 S.W.2d 579, 581 (1997) (discretion whether to excuse jurors for cause); *Bowling v. Commonwealth,* Ky., 942 S.W.2d 293, 299 (1997) (discretion whether to order a change of venue); *Brown v. Commonwealth,* Ky., 890 S.W.2d 286, 289 (1994) (discretion whether to allow or exclude the press during voir dire); *Thompson v. Commonwealth,* Ky., 862 S.W.2d 871, 874 (1993) (discretion whether to allow individual voir dire); *Glass v. Commonwealth,* Ky.App., 769 S.W.2d 764, 765 (1989) (discretion whether to allow direct voir dire by attorneys). We believe that whether to read the entire indictment during voir dire, while a motion to dismiss or sever one or more counts of the indictment is still pending, should likewise be left to the discretion of the trial court.

We will not overturn a trial court's decision made within its discretion, unless there is a clear abuse of that discretion or the decision results in a manifest injustice. *Lear v. Commonwealth,* Ky., 884 S.W.2d 657, 659 (1994). In this case, Count II of the indictment involved a cocaine possession charge. Count I was the murder charge. The trial court had not yet considered the merits of Jarvis's motion to dismiss when it read the entire indictment to the jury. After Count II was dismissed, the trial court, at defense counsel's request, informed the jury that the charges contained in Count II had been dismissed. The trial court did not abuse its discretion, nor did reading the entire indictment result in a manifest injustice. There was no error.

Jarvis raises other issues in addition to those discussed above. After careful review of his arguments, we find that the issues are without merit and undeserving of discussion.

For the reasons set forth above, the judgment and sentence of the Laurel Circuit Court are affirmed.

All concur.