Mark Leo THOMAS, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2003–SC–0989–MR.

Supreme Court of Kentucky.

June 16, 2005.

Rehearing Denied Sept. 22, 2005.

Michael L. Goodwin, Goodwin & Lasch, Louisville, Counsel for Appellant.

Gregory D. Stumbo, Attorney General, George G. Seelig, Assistant Attorney General, Frankfort, Counsel for Appellee.

Opinion of the Court by Justice COOPER.

During the early morning hours of October 9, 2002, Appellant, Mark Leo Thomas, and the two complaining witnesses, Robert Beckwith and Tilden Linker, were involved in an altercation outside the R Place Pub, a bar in Louisville, Kentucky. During the altercation, Appellant drew a handgun and shot Beckwith once in the leg and Linker three times in the hip. Appellant was also injured, suffering fractures of both cheekbones, his jaw, and his left and right maxillary sinuses, as well as injuries to several teeth, which required extraction. Appellant claimed Beckwith and Linker attacked him and that he shot them in self-protection. Beckwith and Linker claimed Appellant shot them without provocation and that other patrons of the bar primarily inflicted Appellant's injuries while subduing and disarming him after the shootings. The only eyewitness to any of this activity was Jeremy Walls, who came to the bar looking for a friend just as Appellant, Beckwith, and Linker were leaving. Walls testified that as he was entering the bar, he saw either Beckwith or Linker shove Appellant; and that as he was leaving the bar less than a minute later, he saw Appellant shoot Beckwith and Linker.

A Jefferson Circuit Court jury convicted Appellant of intentional assault in the first degree, KRS 508.010(1)(a), a Class B felony, for shooting Beckwith, and of wanton assault in the second degree, KRS 508.020(1)(c), a Class C felony, for shooting

Linker.[1] He received consecutive sentences of seventeen and seven years respectively, for a total of twenty-four years. He appeals to this Court as a matter of right, Ky. Const. § 110(2)(b), asserting eight claims of reversible error, *viz:* (1) failure to instruct the jury on assault under extreme emotional disturbance, KRS 508.040, a Class D felony, as a lesser included offense of both charges; (2) admission of prior consistent statements of both Beckwith and Linker; (3) admission of opinion evidence that alcohol in the blood of a person with a history of alcohol abuse metabolizes at a faster rate than that of other persons who have consumed the same amount of alcohol; (4) admission of a statement made by Appellant to the police without *Miranda* warnings; (5) admission of evidence of Appellant's prior use of controlled substances; (6) admission of improper rebuttal evidence; (7) prosecutorial misconduct during Appellant's testimony; and (8) misstatements by the prosecutor during penalty-phase argument. We now reverse and remand this case for a new trial because of the failure to instruct the jury on assault under extreme emotional disturbance, the admission of the prior consistent statements of Beckwith and Linker, and the admission of the opinion premised upon an assumption of a history of alcohol abuse. We will also briefly address Appellant's other claims of error, none of which would warrant reversal.

## I. ASSAULT UNDER EXTREME EMOTIONAL DISTURBANCE.

 KRS 508.040 provides:

---

1. The verdict of guilty of assault in the second degree was premised upon the jury's finding that Appellant used deadly physical force in self-defense under a wantonly held belief in the need to do so. KRS 503.120(1); *Saylor v. Commonwealth,* 144 S.W.3d 812, 818–19 (Ky.

2004); *Commonwealth v. Hager,* 41 S.W.3d 828, 841–44 (Ky.2001); *Elliott v. Commonwealth,* 976 S.W.2d 416, 419–20 (Ky.1998); *Shannon v. Commonwealth,* 767 S.W.2d 548, 548–51 (Ky.1988), *overruled on other grounds by Elliott,* 976 S.W.2d at 422.

(1) In any prosecution under KRS 508.010, 508.020 or 508.030 in which intentionally causing physical injury or serious physical injury is an element of the offense, the defendant may establish in mitigation that he acted under the influence of extreme emotional disturbance, *as defined in subsection (1)(a) of KRS 507.020.*

(2) An assault committed under the influence of extreme emotional disturbance is:

 (a) A Class D felony when it would constitute an assault in the first degree or an assault in the second degree if not committed under the influence of an extreme emotional disturbance; ...

. . .

(Emphasis added.) KRS 507.020(1)(a) provides, *inter alia:*

> [A] person shall not be guilty under this subsection if he acted under the influence of extreme emotional disturbance for which there was a *reasonable explanation or excuse*, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation *under the circumstances as the defendant believed them to be.*

(Emphasis added.) In *McClellan v. Commonwealth*, 715 S.W.2d 464 (Ky.1986), we adopted the following definition of extreme emotional disturbance ("EED"):

> Extreme emotional disturbance is a temporary state of mind so enraged, inflamed, or disturbed as to overcome one's judgment, and to cause one to act uncontrollably from the impelling force of the extreme emotional disturbance rather than from evil or malicious purposes. It is not a mental disease in itself, and an enraged, inflamed, or disturbed emotional state does not constitute an extreme emotional disturbance unless there is a reasonable explanation or excuse therefor, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under circumstances as [the] defendant believed them to be.

*Id.* at 468–69. Subsequent case law has held that the EED must be "sudden and uninterrupted," *Foster v. Commonwealth*, 827 S.W.2d 670, 678 (Ky.1991), though the provocation, or "triggering event," need not occur concurrently with the offense. *Spears v. Commonwealth*, 30 S.W.3d 152, 155 (Ky.2000); *Springer v. Commonwealth*, 998 S.W.2d 439, 452 (Ky.1999). The provocation need not emanate from the victim, *Fields v. Commonwealth*, 44 S.W.3d 355, 358 (Ky.2001), and could be the "cumulative impact of a series of related events." *Holland v. Commonwealth*, 114 S.W.3d 792, 807 (Ky.2003); *Fields*, 44 S.W.3d at 359.

██ Because the issue is whether there was evidence to warrant an instruction on assault under extreme emotional disturbance, we must consider the evidence in the light most favorable to Appellant. *Ruehl v. Houchin*, 387 S.W.2d 597, 599 (Ky.1965) (on claim of error in failing to give requested jury instruction, appellate court reviews evidence in light most favorable to party requesting instruction). *See also United States v. Lewis*, 592 F.2d 1282, 1286 (5th Cir.1979).

Appellant is a resident of Florida but a native of Louisville. He was previously mugged in the parking lot of a Marriott Hotel in Tampa, Florida, resulting in a serious injury to his left eye that required surgery and implantation of metal plates. On October 8, 2002, Appellant arrived in Louisville to spend time with his sister, whose husband was dying of cancer. He intended to stay at a local hotel. He had dinner with his father, then hired a taxi to drive him to the R Place Pub, where he

knew the bartender and hoped to meet some former acquaintances. At the bartender's suggestion, Appellant stored his luggage behind a closed bar on the patio. He removed a holstered handgun from the luggage and placed it between the small of his back and the waistband of his pants. He then, indeed, met and socialized with some old friends. Beckwith and Linker were seated at another table with Beckwith's domestic companion, Sara Bishop. Appellant caught Bishop's eye and smiled at her. Bishop smiled back. Beckwith then began staring at Appellant "with anger in his eyes." When Appellant got up from his table, Beckwith approached him and said, "Let's take this outside." Appellant retreated back to his friends' table and told them, "I've got to get out of here." He asked the bartender to call a taxi to take him to the hotel, retrieved his luggage, and went outside to await the arrival of the taxi. Beckwith and Linker followed him outside. Appellant testified that when he saw them approach, "I knew I was in trouble." Beckwith and Linker began shoving Appellant. Beckwith then punched Appellant in his surgically repaired left eye, causing blood to "explode" from the eye. Both assailants "whaled" him, knocking him to the ground and causing him to become temporarily unconscious. When Appellant regained consciousness, Beckwith was on top of him, still beating him with his fists. Appellant's face and body were covered with contusions, abrasions, and blood. He testified, "I felt like I was dying."

Linker pulled Beckwith off Appellant. Appellant struggled to his feet and drew his pistol, initially fumbling it. Linker mocked him, saying, "What are you going to do with that? Look, you're fumbling it." Linker grabbed for the pistol but Appellant was able to shift it to his other hand. Appellant testified that when Linker again grabbed him, he thought, "They are going to kill me. I've got to get him off of me. They are going to get me down on the ground again and they are going to kill me." Appellant fired what he intended to be a warning shot into the ground (this may have been the shot that wounded Beckwith in the leg). His assailants appeared unphased. Appellant fired another round, attempting to wound Linker in the leg. When Linker continued the assault, Appellant fired two more rounds. Apparently, these last three rounds were the ones that that struck Linker. Both Linker and Beckwith then fell to the ground, and the bartender and other bar patrons wrestled Appellant to the ground and disarmed him.

Of course, the Commonwealth's version of these events was different. Beckwith testified that he berated Appellant for attempting to touch Bishop as she walked by his table, and that Appellant invited him outside to discuss the matter. Linker testified that he had been in the restroom and returned to see Appellant and Beckwith go out the door, so he followed them outside. Beckwith testified that when they got outside, Appellant shot Linker and he (Beckwith) attacked Appellant in an attempt to disarm him. Linker testified that he stepped between Beckwith and Appellant who were "having words" and Appellant shot him. The other bar patrons then arrived and assisted Beckwith in subduing Appellant.

 The trial court concluded that the evidence did not warrant an instruction on assault under extreme emotional disturbance, perceiving that there was no "triggering event" and that the evidence supported only an instruction on self-defense. That might be true if we considered only the Commonwealth's version of the events. However, it is the duty of the trial court in a criminal case to instruct the jury on the

whole law of the case, RCr 9.54(1), and this rule requires instructions applicable to every state of the case deducible from or supported to any extent by the testimony. *Webb v. Commonwealth*, 904 S.W.2d 226, 228 (Ky.1995); *Reed v. Commonwealth*, 738 S.W.2d 818, 822 (Ky.1987). A defendant has the right to have every issue of fact raised by the evidence and material to the defense submitted to the jury on proper instructions. *Hayes v. Commonwealth*, 870 S.W.2d 786, 788 (Ky.1993). He is entitled to an instruction on any lawful defense that he has, *Slaven v. Commonwealth*, 962 S.W.2d 845, 856 (Ky.1997); *Sanborn v. Commonwealth*, 754 S.W.2d 534, 550 (Ky. 1988), including the defense that he is guilty of a lesser included offense of the crime charged. "Although a lesser included offense is not a defense within the technical meaning of those terms as used in the penal code, it is, in fact and principle, a defense against the higher charge." *Slaven*, 962 S.W.2d at 856; *Gall v. Commonwealth*, 607 S.W.2d 97, 108 (Ky.1980), *overruled on other grounds by Payne v. Commonwealth*, 623 S.W.2d 867, 870 (Ky. 1981); *Brown v. Commonwealth*, 555 S.W.2d 252, 257 (Ky.1977). An instruction on a lesser included offense is required if the evidence would permit the jury to rationally find the defendant not guilty of the primary offense, but guilty of the lesser offense. *Commonwealth v. Wolford*, 4 S.W.3d 534, 539 (Ky.1999); *Smith v. Commonwealth*, 737 S.W.2d 683, 687 (Ky.1987). *See also Hopper v. Evans*, 456 U.S. 605, 611–12, 102 S.Ct. 2049, 2053, 72 L.Ed.2d 367 (1982).

 Evidence supporting the defense of self-protection may also support the defense of extreme emotional disturbance.

Self-protection and emotional disturbance are separate defenses and the presence of the former does not automatically trigger the latter, *although under certain circumstances and with certain evidence, both might well be justified.*

*Carwile v. Commonwealth*, 656 S.W.2d 722, 723 (Ky.1983) (emphasis added). Said another way, the mere fact that a defendant claims to have acted in self-defense does not mean that he was acting under the influence of EED, *i.e.*, that his state of mind was necessarily "so enraged, inflamed, or disturbed as to overcome [his] judgment, and to cause [him] to act uncontrollably from the impelling force of the extreme emotional disturbance ...." *McClellan*, 715 S.W.2d at 468. However, a claim of self-defense does not necessarily negate an alternative claim of EED if the evidence, as here, would support both theories.

In *Engler v. Commonwealth*, 627 S.W.2d 582 (Ky.1982), we held it was reversible error to refuse to instruct on assault under extreme emotional disturbance where the defendant stabbed two victims during a melee similar to the one described by Appellant in this case. Engler and his brother were engaged in a brawl with the victims, Camden and Perkins. Engler testified that he stabbed Camden because Camden was threatening his brother with a large tow chain and hook, and that he stabbed Perkins because "Perkins was coming toward him with a knife in his hand and, *having been cut by someone once before on another occasion*, he was 'scared,' 'afraid he was going to stab me.'" *Id.* at 583 (emphasis added).

[U]nder the evidence in this case it would not have been unreasonable for a juror to believe beyond a reasonable doubt that [Engler] was *not* acting in self-protection or in defense of his brother, yet still believe that he *was* acting in a state of "extreme emotional disturbance for which there was a reasonable

**350**

justification or excuse under the circumstances as he believed them to be."

*Id.* at 584 (emphasis added).

The evidence here is even more compelling. Appellant's version of the events is that while he shot Beckwith and Linker because he thought they intended to kill him, he did so only after they had already beaten him "half to death," and reinjured his surgically repaired left eye that had been initially injured in a previous mugging. The jury could have believed, as they obviously did, that Appellant was not entitled to use deadly physical force against two unarmed men, but also have believed that he acted in enraged retaliation for the beating the victims had already inflicted upon him, thereby shooting them while under the influence of EED. The fact of his previous mugging is relevant to whether "there was a reasonable justification or excuse under the circumstances as he believed them to be."

Under the facts as viewed in the light most favorable to Appellant, the trial court erred in refusing to instruct the jury on assault under extreme emotional disturbance as a lesser included offense of both charges of assault in the first degree.

## II. PRIOR CONSISTENT STATEMENTS.

The Commonwealth's first two witnesses were Beckwith and Linker, who testified to their versions of the events that occurred at R Place Pub on the night in question. After the altercation, both were taken to the hospital emergency room for treatment of their wounds, where they were subsequently interviewed by Detective Joseph Woosley. The shootings occurred at approximately 1:25 a.m. Woosley testified that he arrived at the emergency room at 1:55 a.m. On the second day of the Commonwealth's case-in-chief, the prosecutor called Woosley as a witness and

asked him to repeat what Beckwith and Linker had told him during their interviews. When defense counsel objected on hearsay grounds, the prosecutor explained that Woosley's testimony would show that each victim's trial testimony was consistent with the statement each gave shortly after the incident occurred. The trial court correctly concluded that the statements were inadmissible under the hearsay exception for prior consistent statements, KRE 801A(a)(2), because there had been no allegation of recent fabrication or improper influence, but agreed with the prosecutor's secondary argument that the statements were admissible under KRE 803(2) as "excited utterances." Without any other foundation having been laid except that the statements were made at least thirty minutes after the altercation and while the declarants were in the hospital for treatment of their wounds, the trial court admitted the statements as excited utterances.

Temporal proximity to the "startling event" is only one factor to consider in determining whether a statement was "made while the declarant was *under the stress of* excitement caused by the event . . . ." KRE 803(2) (emphasis added). "For an out-of-court statement to qualify for admission under KRE 803(2), it must appear that the declarant's *condition at the time* was such that the statement was spontaneous, excited, or impulsive rather than the product of reflection and deliberation." *Noel v. Commonwealth,* 76 S.W.3d 923, 926 (Ky.2002) (emphasis added) (internal citation and quotation omitted). "[S]pontaneity, as opposed to mere proximity in time, is a most important consideration." *Roland v. Beckham,* 408 S.W.2d 628, 632 (Ky.1966). *See also Honaker v. Crutchfield,* 247 Ky. 495, 57 S.W.2d 502, 504 (1933). In *Souder v. Commonwealth,* 719 S.W.2d 730 (Ky.1986), we identified

eight factors to be considered in determining whether a statement was an excited utterance:

> (i) lapse of time between the main act and the declaration [the only factor considered here], (ii) the opportunity or likelihood of fabrication, (iii) the inducement to fabrication, (iv) the actual excitement of the declarant, (v) the place of the declaration, (vi) the presence there of visible results of the act or occurrence to which the utterance relates, (vii) whether the utterance was made in response to a question, and (viii) whether the declaration was against interest or self-serving.

*Id.* at 733. Temporal proximity and, perhaps, the presence of the visible results of the occurrence (their wounds) are the only factors weighing in favor of admission of Beckwith's and Linker's statements as excited utterances. Both had a motive to accuse Appellant of being the aggressor; for otherwise, they would have been charged with assaulting him instead of vice versa. Woosley did not testify that Beckwith and Linker were actually excited when they made their statements. *Compare United States v. Iron Shell*, 633 F.2d 77, 85 (8th Cir.1980) ("Officer Marshall described Lucy as scared and nervous with her eyes still red from crying and her hair was still messed from the assault."). Beckwith testified that he told Woosley what happened, but he did not claim to have been excited when he gave his statement. Linker denied that he even talked to Woosley in the emergency room, though he maintained that he did give Woosley a statement at an unspecified later time. He, like Beckwith, made no claim that he was excited when he gave his statement. The declarations were not made at the scene of the occurrence. The statements were made in response to questioning and were self-serving.

In *Jarvis v. Commonwealth*, 960 S.W.2d 466 (Ky.1998), we held that the Commonwealth has the burden to prove that an out-of-court statement is an excited utterance. *Id.* at 470.

At trial, the Commonwealth offered absolutely no evidence as to C.J.'s emotional state. Specifically, it offered no evidence as to her level of "excitement" at the time these statements were made. The Commonwealth did not establish the temporal lapse between C.J.'s statements and her mother's death. The Commonwealth did not establish whether the statements were made spontaneously or in response to questioning. The only evidence remotely supportive of the Commonwealth's position on appeal is testimony that placed C.J. outside her parents' home sometime subsequent to her mother's death.

... [S]eemingly, the Commonwealth would have us simply infer C.J.'s mental state.

*Id.* The same is true here. The party claiming a hearsay exception has the burden of proof that the exception applies. *Noel*, 76 S.W.3d at 926; *Slaven*, 962 S.W.2d at 854; *Jarvis*, 960 S.W.2d at 470. Because the Commonwealth failed in its burden of proof, the trial court's KRE 104(a) finding that the prior statements of the complaining witnesses were excited utterances was not supported by substantial evidence and was, therefore, clearly erroneous.

### III. BLOOD ALCOHOL EVIDENCE.

Dr. Mary Fran Mallory testified from a toxicology report that Appellant's blood alcohol (B.A.) level at 3:50 a.m. was 0.141 (Beckwith's B.A. level was 0.076 and Linker's was 0.223). The prosecutor asked Dr. Mallory to perform a "retrograde extrapolation" to estimate Appellant's B.A. level as of 1:25 a.m., "assuming

a history of alcohol abuse." The trial court sustained defense counsel's objection, but permitted the prosecutor to re-phrase the question and ask the doctor to "assume, hypothetically, someone with a history of alcohol abuse." Dr. Mallory's opinion was that such a person's B.A. level would have been 0.21 as of 1:25 a.m.

■■■■■■ Although several eyewitnesses testified that Appellant appeared intoxicated while inside the R Place Pub on the night in question, there was no evidence that he had a history of alcohol abuse. "It is a fundamental rule of evidence that a hypothetical question must be based upon, or contain, a state of facts supported by some evidence." *Hodge v. Commonwealth*, 289 Ky. 548, 159 S.W.2d 422, 423 (1942). Professor Lawson reports that our pre-Rules case law imposed three requirements on the use of hypothetical questions:

(1) the assumptions used in a hypothetical question were required to reflect the true state of the facts in evidence; (2) competent evidence was required to be introduced to support each and every assumption used in such a question; and (3) although the supporting evidence did not have to be uncontradicted, it had to be sufficient to support findings by the jury on every assumption essential to the validity of the opinion.

Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 6.25[3], at 465 (4th ed. LexisNexis 2003) (internal citations omitted). He also opines that "all of the requirements described above are sound enough to have survived the adoption of KRE 702." *Id.* We agree; thus, the objection to Dr. Mallory's opinion should have been sustained. We also agree with Appellant that since the unsubstantiated "hypothetical fact" could not be used to support Dr. Mallory's retrograde extrapolation, it served no purpose other than to insinuate that Appellant was a person of bad character in contravention of KRE 404(a)(1). The prosecutor should not have been permitted to ask the hypothetical question and Dr. Mallory should not have been permitted to respond to it.

## IV. MISCELLANEOUS ISSUES.

■■■■■■ Appellant's statement to Detective Woosley was made at the hospital and before any charges were filed against him. Appellant was not in custody when the statement was made; thus, Woosley was not required to inform him of his *Miranda* rights. *Callihan v. Commonwealth*, 142 S.W.3d 123, 126–28 (Ky.2004). Nor was Appellant charged with a crime at the time of the statement; therefore, his Sixth Amendment right to counsel had not attached. *Linehan v. Commonwealth*, 878 S.W.2d 8, 10 (Ky.1994).

■■■■■■ Dr. Mallory testified that Appellant's urine screen from a sample taken at the hospital showed traces of opiates (pain medication), benzodiazepine (muscle relaxant), and marijuana. Defense counsel conceded that the urine screen results were admissible. Thus, the issue is not preserved for appellate review.

■■■■■■ Jeremy Walls testified as a rebuttal witness for the Commonwealth, primarily because he did not respond to a subpoena and could not be produced by the Commonwealth during its case-in-chief. His testimony partially rebutted Appellant's claim that he shot Beckwith and Linker while they were assaulting him. *Ruppee v. Commonwealth*, 821 S.W.2d 484, 487 (Ky.1991). The trial court did not abuse its discretion in permitting Walls to testify as a rebuttal witness. *Pilon v. Commonwealth*, 544 S.W.2d 228, 231 (Ky. 1976).

Appellant cites two incidents of alleged prosecutorial misconduct. First, the prosecutor laughed and made some facial ges-

tures during Appellant's testimony. At a subsequent bench conference, the prosecutor admitted her actions and apologized. The trial court admonished the prosecutor not to repeat such conduct, and defense counsel requested no other relief. The prosecutor also misstated the parole eligibility evidence during her penalty-phase argument. Defense counsel's objection was sustained, and the prosecutor corrected the misstatement. Again defense counsel requested no other relief. Appellant received all the relief he requested in both instances. Presumably, neither incident will recur at retrial.

Accordingly, the judgment of convictions and the sentences imposed upon Appellant are reversed, and this case is remanded to the Jefferson Circuit Court for a new trial in accordance with the contents of this opinion.

LAMBERT, C.J.; COOPER, GRAVES, JOHNSTONE, SCOTT, and WINTERSHEIMER, JJ., sitting.

LAMBERT, C.J.; GRAVES, JOHNSTONE, and SCOTT, JJ., concur.

WINTERSHEIMER, J., dissents by separate opinion.

Dissenting opinion by Justice WINTERSHEIMER.

I must respectfully dissent from the majority opinion because it was not error for the trial judge to deny the giving of an EED instruction, police testimony was properly admitted, as well as evidence of alcohol use, and the admission of prior consistent statements of the victim was not error.

This case has had an interesting journey through the Supreme Court system. Originally, in December 2004, a memorandum opinion of this Court was issued affirming the conviction and sentence. The vote at that time was 4 to 3 with Justice Cooper writing a dissenting opinion. Subsequently, a petition for rehearing was filed by Thomas which focused on two issues raised in the dissent, the absence of an EED instruction and the excited utterances of the victims. A petition for rehearing was granted and we are now faced with a majority decision which reverses the conviction as well as the original opinion rendered by this Court.

In my view, the trial judge properly denied the request for an EED instruction. *Wheeler v. Commonwealth*, 121 S.W.3d 173 (Ky.2003), indicates that there must be some definite and nonspeculative evidence that the onset of the extreme emotional disturbance was caused by a triggering event. There was evidence before the trial judge that Thomas remained in control up to the time of the shooting and that there was no specific triggering event. The trial judge properly determined that Thomas was entitled to self-defense instructions which were given, but not to an EED instruction.

In regard to the prior consistent statements of the two victims, defense counsel at trial conducted a strong legal attack on the credibility of the victims by comparing their trial testimony to their previous statements. When a police detective who had interviewed the two victims was called to testify, he related the statements made by the victims. The contention is that this testimony was inadmissible hearsay. The trial judge after considerable review determined that the statements were admissible as an excited utterance under KRS 803(2). The statements were made by the victims while they were receiving treatment only minutes after having been shot. It has long been held that rulings on the admissibility of evidence by a trial judge will not be disturbed on appellate review in the absence of an abuse of discretion. *See*

*Commonwealth v. English,* 993 S.W.2d 941 (Ky.1999); *Jarvis v. Commonwealth,* 960 S.W.2d 466 (Ky.1998).

Here, defense counsel was attempting to demonstrate that the victims were fabricating their story to cover one another and that one of the victims had a civil suit pending against Thomas. The testimony by the police detective was responsive and appropriate. The presentation of this information was not in violation of *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). There was no abuse of discretion by the trial judge or any other error in this respect.

The question of evidence of prior alcohol abuse was not properly preserved for appellate review.

I would affirm the conviction in all respects.