RENDERED: MAY 17, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1309-MR

JEVONTAYE TAYLOR                                         APPELLANT

APPEAL FROM FAYETTE CIRCUIT COURT
v.        HONORABLE JULIE MUTH GOODMAN, JUDGE
ACTION NO. 17-CR-00328-001

COMMONWEALTH OF KENTUCKY                                 APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: EASTON, KAREM, AND TAYLOR, JUDGES.

KAREM, JUDGE: Jevontaye Taylor, *pro se*, appeals from the Fayette Circuit

Court's order denying his motion to vacate sentence under Kentucky Rules of

Criminal Procedure (RCr) 11.42. Upon careful review, we affirm.

The underlying facts of the case were set forth by the Kentucky

Supreme Court on direct appeal:

The Commonwealth's primary witness in this case, Chaka Hausley, is Taylor and his co-defendant Quandarious' aunt. On the night of the robbery Chaka and the victim, Myrna Curtis, got into an argument at Myrna's apartment. After the argument, Myrna gave Chaka a ride home. Ten to fifteen minutes after she returned to her apartment, Myrna heard a knock on her front door. Myrna opened the door and saw Chaka who said she left her headphones in the apartment. Myrna left the screen door locked and went to retrieve the headphones from her bedroom.

When Myrna opened the screen door to give the headphones to Chaka, two men rushed the door, and one put a gun to Myrna's forehead. The gunman told Myrna to shut up and backed her up against a wall. While Myrna was being held at gunpoint, the second man began stealing Myrna's wallet with about $60 dollars in it, her cell phone, and a small Bluetooth speaker.

The robbers then ran out of the apartment and left the scene. Chaka started to leave too, but Myrna followed her and asked why Chaka had [let] someone rob her. Chaka replied, "what was I supposed to do, protect you over somebody with a gun?" At that point Myrna went to a nearby friend's house and called the police. Chaka left the scene before the police arrived.

The lead detective in this case, Detective Merker, learned from the responding officer's report that Chaka was present at the time of the robbery and facilitated getting Myrna to open the door. Because of this, Det. Merker met with Chaka at her workplace about two weeks after the robbery. Chaka told Det. Merker that her nephews, Taylor and Quandarious, were the ones who robbed Myrna, but she did not know they planned to do so. She also told him they threatened to kill her if she went to the police. Based on this information Det. Merker obtained arrest warrants for the brothers. They were arrested about a week later at their home.

The day after they were arrested, Det. Merker went to the detention center to get a statement from them. Quandarious told Det. Merker he drove Chaka to Myrna's apartment, but he denied any involvement in the robbery. Taylor declined to speak with Det. Merker.

*Taylor v. Commonwealth*, No. 2018-SC-000178-MR, 2019 WL 2462780, at *1 (Ky. Jun. 13, 2019).

Taylor was thereafter convicted by a jury of first-degree robbery, principal, or complicitor, and being a second-degree persistent felony offender. He received a total sentence of twenty years and was ordered to pay $300 in restitution to Myrna jointly and severally with Quandarious. On direct appeal, the Supreme Court affirmed his conviction but reversed the order of restitution because the trial court failed to hold an adversarial hearing as required by constitutional due process. *Id.* at *4. The case was remanded for further proceedings on that issue alone.

On June 11, 2020, Taylor filed a motion *pro se* to vacate his conviction pursuant to RCr 11.42, and a motion for an evidentiary hearing. He claimed that his trial counsel was ineffective for failing to request a lesser-included instruction to the first-degree robbery charge and for failing to argue that the jury instructions denied Taylor a unanimous verdict. Taylor was appointed counsel who filed a notice of submission on the pleadings which stated that Taylor's *pro se* motion adequately alleged the facts underlying his claims and renewed the request

-3-

for an evidentiary hearing.  The Commonwealth filed a response; Taylor's counsel filed a reply; and the Commonwealth filed a sur-reply.  The trial court entered an order denying Taylor's motion without a hearing.   This appeal by Taylor followed.

## STANDARD OF REVIEW

In a motion brought under RCr 11.42, "[t]he movant has the burden of establishing convincingly that he or she was deprived of some substantial right which would justify the extraordinary relief provided by [a] post-conviction proceeding." *Simmons v. Commonwealth*, 191 S.W.3d 557, 561 (Ky. 2006), *overruled on other grounds by Leonard v. Commonwealth*, 279 S.W.3d 151, 159 (Ky. 2009) (citation omitted).  An RCr 11.42 motion "is limited to issues that were not and could not be raised on direct appeal." *Id.*

A successful petition for relief under RCr 11.42 for ineffective assistance of counsel must meet the twin prongs of "performance" and "prejudice" provided in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); *accord Gall v. Commonwealth*, 702 S.W.2d 37, 39-40 (Ky. 1985).  "First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064.  "Second, the defendant must show that the deficient performance prejudiced the defense.  This

-4-

requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

An evidentiary hearing on the motion is required only "if there is a material issue of fact that cannot be conclusively resolved, *i.e.*, conclusively proved or disproved, by an examination of the record." *Fraser v. Commonwealth*, 59 S.W.3d 448, 452 (Ky. 2001) (citations omitted); RCr 11.42(5). On appeal, "[o]ur review is confined to whether the motion on its face states grounds that are not conclusively refuted by the record and which, if true, would invalidate the conviction." *Lewis v. Commonwealth*, 411 S.W.2d 321, 322 (Ky. 1967).

## ANALYSIS

Taylor raises the following arguments on appeal: (1) general allegations of ineffective assistance of trial counsel as well as a specific allegation that his trial counsel failed to introduce into evidence a video recording of Chaka stating she lied to the police; (2) his trial counsel failed to require the Commonwealth to meet its burden of proof beyond a reasonable doubt by producing the gun used in the robbery; (3) his trial counsel failed to request lesser-included instructions to the charge of first-degree robbery; and (4) the jury instructions denied him the right to a unanimous verdict.

**i. General allegations of ineffective assistance of counsel**

Taylor raises several allegations of ineffective assistance of counsel which he describes as "lack of personal knowledge, leading, improper character evidence, inconsistent statement and unfairly prejudicial." These allegations, which presumably relate to the admissibility of some of the evidence at trial, are so lacking in specificity that we are unable to conduct a meaningful review. RCr 11.42(2) requires the movant to "state specifically the grounds on which the sentence is being challenged and the facts on which the movant relies in support of such grounds." RCr 11.42(2). "Conclusory allegations that counsel was ineffective without a statement of the facts upon which those allegations are based do not meet the rule's specificity standard and so 'warrant a summary dismissal of the motion.'" *Roach v. Commonwealth*, 384 S.W.3d 131, 140 (Ky. 2012) (quoting *Hill v. Lockhart,* 474 U.S. 52, 56, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985)).

Taylor does raise one specific allegation regarding a video recording he claims his mother sent to him, showing Chaka stating that she did not know why she lied to the police that Jevontaye and Quandarious robbed Myrna. He argues that his trial counsel was ineffective for failing to introduce the video into evidence. Taylor claims his attorney told him he sent the video to the assistant Commonwealth Attorney, who told him the video was "no good" and Taylor's mother could be "locked up" for recording someone without her knowledge.

Our review of the record indicates that this claim concerning the video recording, as well as the general allegations regarding the evidence, were not presented in the RCr 11.42 motion and consequently were not addressed by the trial court in its order. It is axiomatic that "[a] new theory of error cannot be raised for the first time on appeal." *Springer v. Commonwealth*, 998 S.W.2d 439, 446 (Ky. 1999) (citations omitted). We recognize that "[p]ro se pleadings are not required to meet the standard of those applied to legal counsel[,]" *Beecham v. Commonwealth*, 657 S.W.2d 234, 236 (Ky. 1983), but an appellate court is simply "without authority to review issues not raised in or decided by the trial court." *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 734 (Ky. 2009) (citations omitted).

Taylor further states that the attorney who represented him in his post-conviction proceedings filed a motion to withdraw and then filed a reply in the RCr 11.42 action. Taylor claims that the firm that employed this attorney discovered he was communicating with the prosecutor and removed him. He further asserts that the attorney thereafter went to work at the Commonwealth Attorney's office. Taylor does not explain how his case was prejudiced by his attorney's alleged actions. In any event, "[t]here is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." *Bowling v. Commonwealth*,

981 S.W.2d 545, 552 (Ky. 1998) (quoting *Coleman v. Thompson*, 501 U.S. 722, 752, 111 S. Ct. 2546, 2566, 115 L. Ed. 2d 640 (1991)).

**ii. Burden of proof**

Taylor argues that his trial counsel failed to require the Commonwealth to meet its burden of proof beyond a reasonable doubt because the Commonwealth never produced the deadly weapon used in the robbery and Myrna did not identify whether Taylor or Quandarious had the handgun. After pointing out that the weapon was not recovered because the defendants fled with it after the robbery, the trial court held that Myrna's testimony was sufficient proof of the existence of a deadly weapon, in reliance on *Wiley v. Commonwealth*, 348 S.W.3d 570 (Ky. 2010). In *Wiley*, the appellant challenged the sufficiency of the evidence supporting his conviction for the first-degree robbery of a gas station. The gas station clerk testified that Wiley approached the checkout counter to pay for a soft drink, then drew a firearm and demanded money from the cash register, while holding the gun two inches from her face. *Id.* at 577. The weapon was not recovered. The Kentucky Supreme Court ruled that the clerk's testimony constituted sufficient evidence to permit the jury to decide whether Wiley possessed a deadly weapon for purposes of the robbery charge because it established that the clerk saw the gun, recognized it as "real," and described it as such. *Id.* "[I]n circumstances where the alleged 'weapon' is never recovered and

its authenticity cannot be readily established . . . [t]he victim's description of the item would ordinarily provide sufficient evidence to permit the jury to decide whether it was among the sort of items declared by the legislature to be a 'deadly weapon.'" *Wilburn v. Commonwealth*, 312 S.W.3d 321, 329 (Ky. 2010).

Myrna's testimony that one of her assailants placed a gun to her head and backed her against the wall was sufficient evidence to prove the existence of a deadly weapon. Her testimony was bolstered by Chaka's testimony that one or both of the defendants had guns on their persons when they drove to Myrna's apartment. Because the evidence presented at trial was more than sufficient to prove the existence of a deadly weapon, a defense objection on these grounds would have been futile. Moreover, Taylor's trial counsel did challenge the sufficiency of the evidence on multiple grounds in a motion for a directed verdict at the close of proof and in a motion for judgment notwithstanding the verdict. Thus, Taylor is unable to meet the first "performance" prong of the test for ineffective assistance of counsel for this claim.

**iii. Jury instructions**

The jury found both defendants guilty of robbery, first degree, principal, or complicitor. Taylor argues he was entitled to an instruction on robbery, second degree, and an instruction on burglary.

"[I]t is the duty of the trial court in a criminal case to instruct the jury on the whole law of the case, RCr 9.54(1), and this rule requires instructions applicable to every state of the case deducible from or supported to any extent by the testimony." *Thomas v. Commonwealth*, 170 S.W.3d 343, 348-49 (Ky. 2005) (citations omitted). "An instruction on a lesser included offense is required if the evidence would permit the jury to rationally find the defendant not guilty of the primary offense, but guilty of the lesser offense." *Id*. (citations omitted).

A person is guilty of second-degree robbery when "in the course of committing theft, he uses or threatens the immediate use of physical force upon another person with intent to accomplish the theft." KRS[1] 515.030(1). "A person is guilty of first-degree robbery when the elements of second-degree robbery are met and the prosecution proves that either the perpetrator:

(1) is armed with a deadly weapon,

(2) uses or threatens immediate use of a dangerous instrument, or

(3) causes physical injury to the victim."

*Johnson v. Commonwealth*, 327 S.W.3d 501, 505-06 (Ky. 2010) (quoting KRS 515.020(1) (emphasis in original)).

The question for purposes of the viability of a second-degree robbery instruction is whether a reasonable jury could believe Javontaye and Quandarious

---

[1] Kentucky Revised Statutes.

went to the apartment and threatened the immediate use of physical force upon Myrna but were not armed with a deadly weapon. Myrna's testimony was clear that one of the men stuck the gun through her screen door, pointed it at her forehead, told her to "shut the f*** up," and backed her against the wall. Chaka could not recall which of her nephews had a gun but that she did see a gun, it was possible they both had guns, and they forced their way into the apartment with a gun or guns after Myrna opened the door. There was simply no evidence from which the jury could conclude that the two assailants were unarmed and that the crime was committed without a deadly weapon as required for a second-degree robbery instruction. A defendant is not entitled to a second-degree robbery charge when a firearm has been brandished. *Swain v. Commonwealth*, 887 S.W.2d 346, 348 (Ky. 1994). As the trial court aptly stated in its order denying the RCr 11.42 motion, the evidence showed the victim was robbed by Taylor and his brother at gunpoint and therefore there was no factual basis for any offense other than first-degree robbery. "Thus, if the instructions were not in error, an evidentiary hearing to determine why defense counsel did not object to them would be futile and pointless." *Commonwealth v. Davis*, 14 S.W.3d 9, 11 (Ky. 1999), *as modified* (Jan. 20, 2000).

As to Taylor's contention that he was entitled to an instruction on burglary, this argument was never presented to the trial court. It may be resolved

on similar grounds to the argument regarding a second-degree robbery instruction. "[A] person is guilty of second-degree burglary when 'with the intent to commit a crime, he knowingly enters or remains unlawfully in a dwelling' but he is only guilty of first-degree burglary if, in addition to proving the elements of second-degree burglary, the prosecution shows that either:

(1) he is armed with a deadly weapon or explosives,

(2) he uses or threatens immediate use of a dangerous instrument, or

(3) he causes the victim physical injury."

*Johnson*, 327 S.W.3d at 506 (quoting KRS 511.030 and KRS 511.020) (footnotes omitted).

First-degree burglary is a class B felony, as is first-degree robbery, so there would have been no advantage to such an instruction. KRS 511.020(2). A second-degree burglary instruction would have required the jury to find that Taylor and Quandarious entered Myrna's apartment without a deadly weapon or without the use or threat of use of a dangerous instrument. Such an instruction would not be supported by the evidence and Taylor's trial counsel was not ineffective for not requesting such an instruction.

Taylor also argues that the jury instructions were flawed for failing to provide definitions of principal and complicitor. This argument was never presented to the trial court. Our review indicates that a full definition of

-12-

"complicity" was provided in the instructions and the concepts of principal and complicitor were clearly explained within the instructions on the charges themselves. Consequently, we see no grounds to support a finding that trial counsel was ineffective for failing to request the inclusion of separate formal definitions of these terms.

**iv. Unanimous verdict**

Finally, Taylor claims he was denied the right to a unanimous verdict. The jury was instructed as to each defendant on the following charges: robbery, first degree; complicity to robbery, first degree; and robbery, first degree, principal or complicitor. Complicity is defined in pertinent part as follows:

> A person is guilty of an offense committed by another person when, with the intention of promoting or facilitating the commission of the offense, he:
>
> (a) Solicits, commands, or engages in a conspiracy with such other person to commit the offense; or
>
> (b) Aids, counsels, or attempts to aid such person in planning or committing the offense; or
>
> (c) Having a legal duty to prevent the commission of the offense, fails to make a proper effort to do so.

KRS 502.020(1).

Taylor argues that in order to charge a person as a principal or complicitor, one individual must be charged with the original underlying charge. But "[c]omplicity is not a separate offense. It is rather an alternative theory of the

-13-

charged offense." *Futrell v. Commonwealth*, 471 S.W.3d 258, 277 (Ky. 2015) (citation omitted). Kentucky precedent holds that the principal/complicitor combination instruction of the type offered in this case does not create a "no unanimous verdict issue 'as long as the evidence [is] sufficient to support a combination instruction.'" *Halvorsen v. Commonwealth*, 671 S.W.3d 68, 73 (Ky. 2023) (quoting *Capstraw v. Commonwealth*, 641 S.W.3d 148, 158 (Ky. 2022)). "[W]here both alternatives are supported by the evidence, combination principal/accomplice instructions . . . are proper." *Futrell*, 471 S.W.3d at 277-78.

This concept is illustrated in *Futrell*, wherein an appeal was brought by a woman and her boyfriend who were both convicted of murdering her infant son. They were the only two people who had access to the child when the murder was committed and "a reasonable juror could have been convinced that either Appellant or both of them inflicted the fatal injuries." *Futrell*, 471 S.W.3d at 271. Therefore, because either or both of them could have been found guilty as the principal, the Kentucky Supreme Court held that a combination instruction was appropriate. "Combination instructions – instructions incorporating alternative theories of a single crime – are appropriate, we have many times held, when, but only when, the evidence supports all of the alternatives." *Id.* at 277 (citations omitted).

Chaka testified that both defendants went to Myrna's apartment and at least one of them was armed. Myrna testified that one of them placed the gun against her forehead and threatened her while the other robbed her of various items. This testimony constituted sufficient evidence to support the finding that either Taylor or Quantarious threatened Myrna with the handgun and the other acted in complicity. Therefore, the instruction on first-degree robbery, principal, or complicitor, was proper and did not violate jury unanimity. Taylor's counsel was not ineffective for not objecting to this instruction because it comports fully with our case law. *See Caudill v. Commonwealth*, 120 S.W.3d 635, 666 (Ky. 2003), *as modified* (Feb. 5, 2004) ("The unanimity requirement was not violated because both theories were supported by the evidence[.]").

## **CONCLUSION**

For the foregoing reasons, the Fayette Circuit Court's order denying Taylor's RCr 11.42 motion is affirmed.

ALL CONCUR.

BRIEF FOR APPELLANT:                    BRIEF FOR APPELLEE:

Jevontaye Taylor, *pro se*                     Daniel Cameron
Eddyville, Kentucky                            Attorney General of Kentucky

                                               Joseph A. Beckett
                                               Assistant Attorney General
                                               Frankfort, Kentucky