## Ferguson v. Commonwealth.

(Decided January 23, 1931.)

94

JAMES CLAY for appellant.

J. W. CAMMACK, Attorney General, and GEORGE HUNT MITCHELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE LOGAN—Affirming.

Appellant was charged with the murder of Joe Carter, a deputy sheriff in Elliott county, Ky., and was convicted and his punishment fixed at life imprisonment. The homicide occurred in 1926, but appellant was not apprehended until about 1929.

The evidence presented by the commonwealth is to the effect that a warrant was obtained against Henry Ferguson, a son of appellant, charging him with housebreaking, and this warrant was placed in the hands of

Joe Carter to execute. He summoned a posse of three or four men to go with him, and when he came to the home of appellant it was very early in the morning before the family had arisen. He sent two of his posse to the back door to prevent the escape of Henry Ferguson, and he rapped on another door demanding entrance and was bidden to enter. He and one of his posse went into the room and inquired of appellant as to the whereabouts of Henry. Appellant informed the deputy that Henry was in another room, and he found him there and told him that he had a warrant for his arrest. Henry made no objection and got out of the bed and partly dressed. He had a pistol, and when he went into the room where appellant was he carried the pistol with him and hung it on a nail in the wall. He sat down to put on his shoes. There was some talk, and the deputy and the man who was with him expressed the opinion that there was nothing in the warrant and that appellant need not feel apprehensive about it. Appellant had partly dressed and sat down to put on his shoes. He was under the pistol. The wife of appellant said to the deputy that she hoped he would not treat Henry as hé had treated her son, Roscoe, and made the statement that when he had attempted to arrest Roscoe some time before he had shot at him and powder burned him. The deputy assured her that he had not done so. Appellant procured the pistol from the nail and put it in his lap, or on the chair, while he was putting on his shoes. When the deputy saw that he had the pistol, he told him to put it up, as he did not want any trouble there. Appellant applied an abusive epithet to the deputy and immediately fired the pistol, and the bullet found lodgment in the chest of the deputy, resulting in his death a little later. According to the testimony of the commonwealth, the shooting was unprovoked, and without the slightest justification.

Some of the witnesses for appellant testified that when the deputy told him to put up the pistol, he started towards him with gestures indicating that he was going to draw his pistol and that appellant fired the shot as he approached him. Appellant makes out a case for himself not materially different from that made out against him by the commonwealth. The jury was amply warranted in returning a verdict finding appellant guilty of murder.

Appellant complains that incompetent evidence was admitted over his objection. It is said that the evidence relating to the warrant was not competent, as the warrant should have been produced on the trial. It is not improper to prove that the officer who sought to make the arrest had a warrant. No one disputes that he had a warrant for Henry Ferguson, or that Henry Ferguson resided in the home of the appellant. Aside from this, when the officer reached the home of appellant he was invited into the house. The only purpose of showing that he had a warrant was to give a reason for his being at the home of appellant, and he had a right to be there because of the warrant, and he was not a trespasser as he had been invited into the home.

Another complaint about the evidence is that threats by appellant were proven against persons other than the deputy. The record shows that one or more witnesses testified that appellant had made threats by stating, in substance, that he would have to do something about persons that the witness did not name, and upon being asked who the threats were against he mentioned Joe Carter, the deputy that was killed, and two other persons. Joe Carter was one of the men embraced in the threats, and the fact that the witness stated that he mentioned two others in the threat did not render the evidence incompetent, as the jury was entitled to have the exact statement which was made by appellant. The exact answer made by the witness was: "He said maybe some time he would get them somewhere or other where he could get even with them." The witness was then asked, "Did he call the names?" and answered, "Jim Pennington, Joe Carter, John Binion." A question was then asked as to whether the men mentioned had been since killed. An objection was sustained to this question, and the court admonished the jury as to the evidence about the threats in this language: "You will not consider that only as to Joe Carter." Another witness made substantially the same statements and the court made no admonition. We do not think the evidence was incompetent, but, if it was, it is entirely too trivial to be relied upon as a ground of reversal.

The instructions are attacked as erroneous. The first instruction told the jury that it was admitted that Joe Carter was a deputy sheriff at the time of the killing and had a warrant for the arrest of Henry Ferguson.

It was admitted that he was a deputy sheriff, but there was no admission by the appellant that he had a warrant for the arrest of Henry Ferguson; but as the evidence is abundant that he did have such a warrant and is disputed by no person, there was no harm in the instruction and nothing prejudicial to the rights of the appellant. Another complaint about the instructions is that the self-defense instruction used the word "escape" in that part of the instruction allowing appellant to shoot in self-defense if he had no other safe, or apparently safe means to avert, or escape, the danger. The instruction should have been in the usual form as found in Hobson on Instructions to Juries, sec. 758, and the footnotes thereto. This court has condemned instructions using the word "escape" a number of times of late, as is shown by the authorities cited in the footnote to the above-mentioned section. The trial court should be careful not to depart from the usual form, but it is not every departure that constitutes an error. The part of the instruction complained of is in this language:

> "And there appeared to the defendant, exercising a reasonable judgment at the time no other safe or apparently safe means to avert or escape the danger to himself or any member of his family, real or to the defendant apparent, short of flight, then they will find the defendant not guilty on the ground of self-defense or apparent necessity."

The use of the word "escape" has been condemned by this court because it carries with it the idea of flight, and the court has often said that a man does not have to flee from the danger in order to avert it. He does not have to run away, although he has the opportunity to do so. This instruction told the jury that he did not have to run away, as it specifically said that he had the right to shoot in defense of himself, or family, if there was no other safe means to avert, or escape, the danger short of flight. The instruction was not prejudicial.

Further complaint is made about the admission of evidence. It is argued that the court allowed evidence of the good character for peace of the deputy who was shot. It is said that this was error as his reputation for peace had not been attacked. Appellant filed an affidavit for a continuance which was overruled, and he was allowed to read his affidavit as to what the absent witnesses would state as evidence. His affidavit was to the

effect that these witnesses would testify that the slain deputy was a dangerous and violent man. After the affidavit was read, the commonwealth, in rebuttal, introduced two witnesses who contradicted the statements on this point in the affidavit. The evidence was proper.

Judgment affirmed.