**William ELLIOTT, Appellant,**

v.

**COMMONWEALTH of Kentucky,
Appellee.**

No. 97–SC–700–DG.

Supreme Court of Kentucky.

Sept. 3, 1998.

W. Currie Milliken, Wesley V. Milliken, Milliken Law Firm, Bowling Green, for Appellant.

A.B. Chandler, III, Attorney General, Amy F. Howard, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, for Appellee.

COOPER, Justice.

Appellant was convicted of reckless homicide in the Simpson Circuit Court and sentenced to one year in prison. His sentence was probated on the condition that he serve 120 days in the county jail. KRS 533.030(6). The Court of Appeals reluctantly affirmed in a 2–1 decision, noting that it was compelled to follow the controlling precedent of *Shannon v. Commonwealth,* Ky. 767 S.W.2d 548 (1988). SCR 1.030(8)(a). We granted discretionary review and now reverse the Simpson Circuit Court and the Court of Appeals and remand this case for a new trial.

### THE FACTS.

On July 18, 1993, the Harristown American Legion Post hosted a dance in Franklin, Kentucky, which was attended by approximately one hundred persons, including the victim, Gary Barker. Appellant did not attend the dance, but it was his duty as Post Commander to "check out" the receipts and close up the Post after such an event. To that end, he arrived at the Post at approximately 11:30 P.M. Shortly thereafter, everyone else departed, except Barker and two employees of the Post. One of the employees advised Appellant that Barker had been drinking since three or four o'clock that afternoon and had been harassing some of the women in attendance at the dance. Appellant testified that he was kin to Barker, had known him all his life, and had always gotten along with him. While Appellant and the two employees proceeded with the "check out," Barker waited for his wife, Belvia Barker, to pick him up and take him home.

Upon arriving at the Post, Belvia Barker sent their eleven-year-old son inside to fetch his father. When Barker was reluctant to leave, Appellant took him by the arm and "walked" him out of the Post and into the parking lot. Appellant testified that Barker repeatedly protested that he did not want to leave. Upon arriving at Belvia's vehicle, Barker swung at Appellant and struck him in the forehead with a sack containing a can of beer. Though staggered by the blow, Appel-

lant retaliated by striking Barker in the jaw with his fist, knocking him to the ground. When Barker attempted to get up, Appellant kicked him in the chest. There was evidence that Appellant then stomped Barker, kicked him in the head, and otherwise beat him to an extent in excess of that necessary for his own self-protection. However, everyone who witnessed the incident, including Barker's eleven-year-old son, agreed that Barker started the altercation by striking Appellant in the head with the can of beer.

Barker ultimately got into his wife's car and was driven home. Before going to bed that night, Belvia Barker noticed a small injury over her husband's left eye and some blood in his mouth. When she awakened the next morning, he had fallen out of bed and onto the floor. She helped him back to bed and gave him an aspirin for his headache. When she came home for lunch, Belvia found her husband unconscious on the floor, with a large knot on the back of his head. He was transported to a hospital where he died the next day of a subdural hematoma. The medical examiner testified that Barker's fatal injury could not have been caused by a fall, but was the result of a blow to the head.

The grand jury indicted Appellant for reckless homicide. At trial, Appellant denied stomping and kicking Barker and testified that he only struck Barker in self-defense. However, relying on *Shannon v. Commonwealth, supra*, the trial judge refused to instruct the jury on self-protection and that refusal is the sole claim of error on appeal. With this fact situation, we are once again squarely presented with what we, ourselves, have characterized as the "*Shannon* problem." *McGinnis v. Commonwealth*, Ky., 875 S.W.2d 518, 520 (1994).

### THE HOMICIDE STATUTES.[1]

The penal code defines two degrees of intentional homicide, *viz:* intentional murder and first-degree manslaughter; and three degrees of unintentional homicide, *viz:* wanton murder, second-degree manslaughter, and reckless homicide. Each offense re-

quires proof that the defendant committed an act which caused the death at another person. The degree of the offense depends upon the state of mind, or mens rea, of the defendant at the time of the act. Intentional murder requires "an intent to cause the death of another person," KRS 507.020(1)(a); whereas first-degree manslaughter requires either "an intent to cause the death of another person," but while acting under extreme emotional disturbance, KRS 507.030(1)(b), or "an intent to cause serious physical injury to another person," though the act nevertheless caused that person's death. KRS 507.030(1)(a). Second-degree manslaughter requires proof that the defendant "wantonly cause[d] the death of another person." KRS 507.040. Wanton murder requires proof that the defendant "cause[d] the death of another person" by "wantonly engag[ing] in conduct" creating a grave risk of death to another person under circumstances manifesting extreme indifference to human life. KRS 507.020(1)(b). Reckless homicide requires proof that the defendant "with recklessness ... cause[d] the death of another person." KRS 507.050. The penal code defines the culpable mental states of intentionally, wantonly and recklessly as follows:

"Intentionally"—A person acts intentionally *with respect to a result or to conduct* described by a statute defining an offense when his conscious objective is to cause that result or to engage in that conduct.

"Wantonly"—A person acts wantonly *with respect to a result or to a circumstance* described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation....

"Recklessly"—A person acts recklessly *with respect to a result or to a circumstance* described by a statute defining an offense when he fails to perceive a sub-

---

1. Because of the facts of this case, our analysis is confined to intentional and unintentional homicides as defined in KRS Chapter 507. However, the same analysis would apply to intentional and unintentional assaults as defined in KRS Chapter 508.

stantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature that failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation.

KRS 501.020(1), (3) and (4). (Emphasis added.)

Although the definition of "intentionally" refers to a defendant's state of mind with respect to either his conduct or the result of that conduct, the statutes defining the two degrees of intentional homicide clearly refer to intent only with respect to the result of the defendant's conduct, i.e., intent to cause death or serious physical injury to another person. The definitions of "wantonly" and "recklessly" make no reference to the defendant's state of mind with respect to his conduct, but refer only to his state of mind with respect to the result of that conduct or to the circumstance which prompted the conduct.

> By examining the homicide offenses in Chapter 507, one can see that "intentionally" is used only in relationship to the result of death. By examining the definitions of "wantonly" and "recklessly," one can see that they are designed for use only in relationship to the result of conduct and circumstances surrounding conduct but not in relationship to conduct itself.

Cooper and Lawson, *Self-Defense in Kentucky: A Need for Clarification or Revision,* 76 Ky. L.J. 167, 188–89, n. 87 (1987–88).

■ In other words, it is immaterial to a charge of unintentional homicide that the defendant may have intended his conduct, if he did not intend that his conduct would cause the death of another person. Even though he did not intend to kill, if he was aware of and consciously disregarded a substantial and unjustifiable risk that his conduct would result in the death of another person, he is guilty of second-degree manslaughter or, if accompanied by the statutory aggravating circumstances, wanton murder; or if he failed to perceive a substantial and unjustifiable risk that his conduct would result in the death of another, he is guilty of

reckless homicide. Of course, if the defendant did not intend to kill, and if his mental state with respect to the victim's death was neither wanton nor reckless, the death was accidental and the defendant is not guilty of any degree of homicide.

## THE SELF–PROTECTION STATUTES.

Under the common law, self-defense was available to preclude a conviction of assault or homicide only if the defendant had reasonable grounds to believe at the time of his act that the action he took was necessary to protect himself from an imminent threat of death or serious bodily injury. *E.g., Brown v. Commonwealth,* 308 Ky. 486, 214 S.W.2d 1018 (1948); *Farley v. Commonwealth,* 284 Ky. 536, 145 S.W.2d 100 (1940); *Ferguson v. Commonwealth,* 237 Ky. 93, 34 S.W.2d 959 (1931). The penal code takes a different approach. KRS 503.050 provides as follows:

> (1) The use of physical force by a defendant upon another person is justifiable when the defendant *believes* that such force is necessary to protect himself against the use or imminent use of unlawful physical force by the other person.

> (2) The use of deadly physical force by a defendant upon another person is justifiable under subsection (1) only when the defendant *believes* that such force is necessary to protect himself against death, serious physical injury, kidnapping, or sexual intercourse compelled by force or threat.

(Emphasis added.) Thus, the initial focus of the penal code is on the defendant's actual subjective belief in the need for self-protection and not on the objective reasonableness of that belief. However, KRS 503.120 describes two circumstances when an assault or a homicide committed under an actual belief in the need for self-protection [2] will not result in complete exoneration. One such circumstance is when the defendant's act causes injury, risk of injury, or death to an innocent bystander. KRS 503.120(2). The other is described in KRS 503.120(1):

> *When the defendant believes* that the use of force upon or toward the person of

---

2. KRS 503.120(1) and (2) apply not only to claims of self-defense, but to all of the justifica-

tion defenses described in KRS 503.050 through KRS 503.110.

another is necessary for any of the purposes for which such belief would establish a justification under KRS 503.050 to 503.110 *but the defendant is wanton or reckless in believing* the use of any force, or the degree of force used, to be necessary in acquiring or failing to acquire any knowledge or belief which is material to the justifiability of his use of force, *the justification afforded by those sections is unavailable in a prosecution for an offense for which wantonness or recklessness, as the case may be, suffices to establish culpability.*

(Emphasis added.)

As the emphasized language of this statute and the 1974 Commentary thereto indicate, its purpose (and only purpose) is to limit the effect of the subjective belief provisions of KRS 503.050 and the other KRS Chapter 503 justifications to the extent that a belief which is so unreasonable that it rises to the level of wantonness or recklessness with respect to the circumstance then being encountered by the defendant, *e.g.,* whether he needed to act in self-protection, does not result in acquittal, but rather in conviction of a lesser offense for which wantonness or recklessness is the culpable mental state, *i.e.,* second-degree manslaughter or reckless homicide.[3] The issue is presented to the jury by an instruction along the lines of those suggested at 1 Cooper, *Kentucky Instructions to Juries* §§ 11.08A and B (4th ed. Anderson 1993). *See Blake v. Commonwealth,* Ky., 607 S.W.2d 422 (1980), as reaffirmed by *Shannon v. Commonwealth, supra,* at 551. Since the language of KRS 503.120(1) limits its application to whether the defendant was wanton or reckless with respect to a circumstance, *e.g.,* whether he needed to act in self-protection, it has no application to whether he was wanton or reckless with respect to the result of his conduct, *e.g.,* whether his act would cause the death of another person.

## THE "SHANNON PROBLEM."

*Shannon v. Commonwealth, supra,* addressed two issues with respect to KRS 503.120(1), both of which were directly traceable to *Baker v. Commonwealth,* Ky., 677 S.W.2d 876 (1984) and *Gray v. Commonwealth,* Ky., 695 S.W.2d 860 (1985). First, *Baker/Gray* misinterpreted KRS 503.120(1) to pertain to a defendant's act rather than to his belief with respect to the circumstances motivating his act. *Baker/Gray* then held that self-defense is an intentional act and second-degree manslaughter and reckless homicide are unintentional acts; *a fortiori,* an act committed in self-defense can never constitute the crimes of second-degree manslaughter or reckless homicide, overruling *Blake v. Commonwealth, supra. Baker, supra,* at 879; *Gray, supra,* at 862. *Baker/Gray* then read KRS 503.120(1) to mean that self-protection is available as a defense to an unintentional crime, but only if the defendant's belief in the need for self-protection was not wantonly or recklessly held, *i.e.,* was objectively reasonable. *Baker, supra,* at 878; *Gray, supra,* at 862. This interpretation left the law of self-defense in the incongruous posture that an unreasonable belief in the need for self-protection was a complete defense to an intentional crime, but an objectively reasonable belief was required for exoneration of an unintentional crime. A defendant who killed intentionally was entitled to be subjectively unreasonable, but one who killed unintentionally was required to be objectively reasonable. Cooper and Lawson, *supra,* at 185–87.

*Shannon v. Commonwealth, supra,* at 548–51 *(Shannon, Part I )* readdressed this rea-

---

**3.** If the charged offense is intentional murder or first-degree manslaughter, a wantonly held belief in the need for self-protection reduces the offense to second-degree manslaughter and a recklessly held belief reduces the offense to reckless homicide. If the charged offense is second-degree manslaughter, a recklessly held belief in the need for self-protection reduces the offense to reckless homicide. On the other hand, the "wanton or reckless belief" analysis has no application to a charge of wanton murder, because the existence of an actual subjective belief in the need to act in

self-protection necessarily precludes a finding of the element of "extreme indifference to the value of human life" required by KRS 507.020(1)(b). R. Lawson and W. Fortune, *Kentucky Criminal Law* § 4–2(e)(3), p. 152, n. 90 (LEXIS 1998). In that event, the jury would find the defendant not guilty of wanton murder because of his subjective belief in the need to act in self-protection; but could find that he committed second-degree manslaughter under a recklessly held belief in the need to act in self-protection, and thus convict him of reckless homicide.

sonable/unreasonable belief analysis, overruled *Baker* and *Gray,* and reinstated *Blake v. Commonwealth, supra.* Unfortunately, however, *Shannon, supra,* at 551–53 (*Shannon, Part II* ) embraced the intentional/unintentional act analysis espoused in *Baker/Gray* and held that since self-defense is an intentional act, it cannot be a defense to a charge of wanton murder, second-degree manslaughter, or reckless homicide, because those offenses are premised upon unintentional acts. In so doing, *Shannon, Part II* overruled *Thompson v. Commonwealth,* Ky., 652 S.W.2d 78 (1983) and *Kohlheim v. Commonwealth,* Ky.App., 618 S.W.2d 591 (1981), which had held precisely to the contrary. Thus, whereas *Baker/Gray* had left the law of self-defense in the incongruous posture that an unreasonable belief was sufficient to support a defense to an intentional crime, but only a reasonable belief could support a defense to an unintentional one, *Shannon, Part II* left us with the even greater incongruity that the statutory defenses set forth in KRS Chapter 503 are available to one who acts with an intent to kill, but are unavailable to one who acts with a less culpable mental state. *Shannon, Part II* was specifically reaffirmed in *Holbrook v. Commonwealth,* Ky., 813 S.W.2d 811 (1991), *Barbour v. Commonwealth,* Ky., 824 S.W.2d 861 (1992), *Sizemore v. Commonwealth,* Ky., 844 S.W.2d 397 (1992) and *McGinnis v. Commonwealth, supra.*[4]

The so-called *"Shannon* problem" derives from the fact that, as here, a defendant can be deprived of a valid defense merely because the indictment charged him with wanton murder, second-degree manslaughter or reckless homicide, instead of intentional murder or first-degree manslaughter. Thus, in *McGinnis,* where the defendant claimed both self-defense and the absence of intent to kill, "the prosecutor argued in effect, repeatedly, that self-defense was not available on a charge of wanton murder, so forget the self-defense claim—the accused had convicted himself of wanton murder out of his own

mouth [by testifying that he shot the victim, but did not intend to kill him]." *McGinnis,* 875 S.W.2d at 526.

*McGinnis* sought to resolve the *"Shannon* problem" by holding that because intentional murder and wanton murder are parallel versions of the same offense, if a defendant claims self-defense or any other KRS Chapter 503 justification, the jury cannot be instructed on a theory of wanton murder, but must be instructed only on intentional murder, qualified by an instruction on the defense, and on any appropriate lesser included offenses. *Id.* at 524. In other words, a defendant can eliminate the possibility of a conviction of wanton murder merely by asserting a statutory defense.

> *McGinnis* precludes a conviction [of wanton murder] in any case where the defendant claims self-protection or another KRS Chapter 503 justification, no matter how preposterous that claim might be. *Mishler v. Commonwealth,* Ky., 556 S.W.2d 676, 680 (1977). If the jury disbelieves the self-protection evidence, but believes the defendant did not intend the victim's death, it can only find him guilty of a lesser offense than Murder. This holding permits the defendant to control his own prosecution by claiming self-protection in a case where the jury might otherwise convict him of wanton Murder.

1 Cooper, *Kentucky Instructions to Juries* § 11.07 (Comment, 1998 Cum.Supp.) (4th ed. Anderson 1993). Of course, while *McGinnis* may have ameliorated the *"Shannon* problem" in the context of an indictment for murder, it did not address the problem in the context of an indictment for second-degree manslaughter or, as here, reckless homicide, where there is no parallel intentional crime of the same classification.

### CONCLUSION.

The flaw in the reasoning of *Shannon, Part II,* perpetuated in *Holbrook, Barbour* and *Sizemore,* and compounded in *McGinnis*

---

4. On the same day *McGinnis* was decided, a petition for rehearing was denied in the case of *Hayes v. Commonwealth,* Ky., 870 S.W.2d 786 (1993), in which a conviction of reckless homicide was reversed and remanded for a new trial

because the trial judge had failed to give a requested instruction on self-protection. The opinion in *Hayes* makes no mention of *Shannon.* The opinion in *McGinnis* makes no mention of *Hayes.*

is the failure to recognize that it is not a defendant's *act* which determines whether his crime is classified as intentional or unintentional, but his *state of mind with respect to the result of his act.*

One misconception is that a homicide offender's state of mind can be measured in terms of its relationship to the offender's *act* . In most instances, the state of mind of such an offender is measured in terms of its relationship to the *result* of his act (namely, the death of the victim). In one very important instance [the "wanton or reckless belief" qualification in KRS 503.120(1) ], the state of mind of a homicide offender is measured in terms of its relationship to a *circumstance* involved in the offender's conduct. In no instance, however, do the provisions of the Code allow the culpable mental state for homicide to be measured in relationship to an offender's *act.*

Cooper and Lawson, *supra,* at 188.

As applied to the facts of this case, the definitions of "wantonly" and "recklessly" address Appellant's state of mind not with respect to his act, but with respect to the result of his act. Appellant admits that he intended to strike Barker. He denies that he thereby intended to cause Barker's death. The grand jury returned an indictment only for reckless homicide, presumably agreeing that *Appellant did not intend to kill Barker. This* absence of intent to cause the death of another is the essence of an unintentional homicide. But the fact that Appellant did not intend for his act to cause Barker's death does not mean that he did not intend to commit the act or that he was not privileged to commit the act in self-defense.

*Shannon, Part II* focused on the language in KRS 503.120(1) that "the justification afforded by those sections is unavailable in a prosecution for an offense for which wantonness or recklessness, as the case may be, suffices to establish culpability," 767 S.W.2d at 552, but ignored the immediately preceding language which applies that precept only to those circumstances when "the defendant is wanton or reckless in believing" that it is necessary to act in self-defense. The statute permits a defense premised upon an actual,

but wantonly or recklessly held, belief to reduce a primary offense to a lesser offense; but does not permit the same or another KRS Chapter 503 defense to be applied to the reduced offense in order to effect an acquittal. We further note that if the drafters of the penal code had intended to preclude self-protection and the other KRS Chapter 503 justifications as defenses to *all* unintentional crimes, there would have been no need for KRS 503.120(2), which specifically eliminates those defenses when a defendant wantonly or recklessly injures or kills an innocent bystander.

■ Having concluded that the statutory analysis set forth in *Shannon, Part II* was fundamentally flawed, we now depart from its holding that KRS 503.120(1) precludes the assertion of self-protection and the other KRS Chapter 503 justifications as defenses to charges of wanton murder, second-degree manslaughter, or reckless homicide (as well as to charges of wanton or reckless assault), and reinstate the holdings in *Thompson v. Commonwealth, supra,* and *Kohlheim v. Commonwealth, supra.* We specifically overrule *Shannon, Part II, Holbrook, Barbour, Sizemore,* and *McGinnis,* all *supra,* to the extent that they hold otherwise. We also overrule that portion of *McGinnis* which holds that an assertion of self-defense or another KRS Chapter 503 justification precludes an instruction on wanton murder as an alternative to intentional murder.

For the reasons set forth in this opinion, the judgment of conviction and sentence imposed upon Appellant are reversed and this case is remanded to the Simpson Circuit Court for a new trial at which, if the evidence is the same, Appellant shall be entitled to an instruction on the defense of self-protection.

All concur.