NOT  RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name:  07a0700n.06
Filed:  September 26, 2007

No. 06-6023

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| BILLY JOE BENTLEY, | : | |
| | : | |
| Petitioner-Appellant, | : | On Appeal From the United States |
| | : | District Court for the Eastern |
| vs. | : | District of  Kentucky |
| | : | |
| JOHN MOTLEY, | : | |
| | : | |
| Respondent-Appellee. | : | |

BEFORE: GIBBONS and SUTTON, Circuit Judges; BECKWITH, District Judge.[*]

SANDRA S. BECKWITH, District Judge.  Billy Joe Bentley appeals the district court's

dismissal of his habeas corpus petition.  Bentley was convicted by a Kentucky state court jury of

wanton murder, and subsequently sentenced to a twenty-year term of imprisonment.  After

exhausting his state remedies, Bentley filed a petition for habeas relief.  The district court dismissed

his petition after finding no merit to his claims.  The parties have waived oral argument pursuant to

Sixth Circuit Rule 34(j).  Upon review, this panel unanimously agrees that oral argument is

unnecessary.  Fed. R. App. P. 34(a).  We affirm.

I.

---

[*] The Honorable Sandra S. Beckwith, Chief Judge, United States District Court for the
Southern District of Ohio, sitting by designation.

The facts giving rise to this case are undisputed and are summarized in the Kentucky Supreme Court's opinion affirming Bentley's conviction:

> On the night of March 20-21, 1997, [Bentley] went to Marlowe's in the company of Chester and Janet Newsome. Upon arriving at the nightclub, [Bentley] left a .357 Ruger handgun which he had borrowed 'for protection' on the middle bench of the Newsomes' van. [Bentley] and the Newsomes remained at Marlowe's until it closed. Upon returning to the van, Chester Newsome got into the driver's seat and Janet Newsome into the front passenger seat. Appellant entered the sliding side door of the van and sat down on the right side of the van's middle bench directly behind Janet Newsome. According to [Bentley], the .357 Ruger was laying on the bench adjacent to his left thigh.
>
> Chester Newsome noticed Ricky Elswick in the parking lot and called out to him. According to Newsome, [Bentley] asked him not to invite Elswick over to the van. Nevertheless, Elswick approached the vehicle, opened the sliding side door to where [Bentley] was sitting, touched [Bentley] on the right shoulder, and told him to move over. As Elswick started to enter the van, both Newsomes heard a gunshot. Chester Newsome asked [Bentley], "What are you doing, Bill?" whereupon a second shot was fired. One of the shots struck Elswick in the face and killed him. The other went through the floorboard of the van near [Bentley's] feet.

J.A. 81-82. Bentley testified at his trial that he fired the shots accidentally. Bentley and Elswick were friends and Bentley said he had no conflicts with Elswick that would cause Bentley to shoot his friend. The jury convicted Bentley of wanton murder, a conviction affirmed by the Kentucky appellate courts.

Bentley then sought post-conviction relief on several grounds.[1] Bentley contended that his trial attorney, Ms. Harolyn Howard, provided ineffective assistance of counsel due to an alleged conflict of interest. Howard's son was a close friend of Elswick's son and was at Marlowe's the night of the shooting. Bentley also argued that Howard failed to effectively cross-examine Mrs. Newsome, who was a trial witness for the state, and failed to subpoena another witness to testify

---

[1] Bentley raised several errors in his post-conviction proceedings but only two survive in his appeal to this Court.

about why Bentley had the gun the night of Elswick's murder. After an evidentiary hearing, the state court denied Bentley relief. Evidence presented at the hearing established that Howard met with Bentley at the jail the night he was arrested. She disclosed the information about her son to Bentley, who then signed a written waiver of any possible conflict. Bentley again waived any possible conflict prior to his trial under questioning from the trial judge.

The state court concluded that no actual conflict of interest existed between Bentley and Howard. It also found that Bentley's waiver of any potential conflict was knowing and voluntary. The court rejected Bentley's argument that Howard should have called additional witnesses or cross-examined Newsome more vigorously, concluding that these did not rise to the level of ineffective assistance. The state appellate courts affirmed. Bentley timely filed his habeas corpus petition in the federal district court on January 27, 2005.

The Magistrate Judge recommended that Bentley's petition be dismissed. (JA 80) The Magistrate Judge's Report notes that the Kentucky courts analyzed Bentley's ineffective assistance claims under *Strickland v. Washington*, 466 U.S. 668 (1984), and concluded that Bentley did not show "a reasonable probability, but for counsel's deficiencies, that the result of the proceeding would have been different," *id.* at 694. The Magistrate Judge concluded that the state courts correctly applied *Strickland* in a reasonable manner. Bentley objected to the Report, arguing that Howard had an actual conflict of interest and prejudice should therefore be presumed. Bentley also argued that the Kentucky courts unreasonably applied *Strickland* by focusing on what Howard did during his trial rather than evaluating what she failed to do. The district court rejected Bentley's objections, adopted the Magistrate Judge's Report, and dismissed Bentley's petition. Bentley timely appealed.

II.

Bentley's petition was filed after the effective date of the Antiterrorism and Effective Death

Penalty Act of 1996 ("AEDPA"). Under 28 U.S.C. §2254(d) as amended by AEDPA, Bentley is

not entitled to habeas relief unless the underlying state court proceedings

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings.[2]

We review *de novo* the district court's conclusions of law and mixed questions of law and fact, and

its factual findings for clear error. *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). We

presume that a state court's factual findings are correct as required by 28 U.S.C. §2254(e)(1).

A.      Howard's Conflict of Interest.

Bentley argues that Howard had an actual conflict of interest because of her son's friendship

with Elswick and his animosity towards Bentley. Bentley argues that prejudice should be presumed

to result, relying on *Cuyler v. Sullivan*, 446 U.S. 335 (1980). *Cuyler* dealt with a dual representation

conflict. The Supreme Court has held that *Cuyler*'s "presumed prejudice" test is limited to cases

involving multiple concurrent representation. *See Mickens v. Taylor*, 535 U.S. 162, 175 (2002). As

this Court noted in *Stewart v. Wolfenbarger*, 468 F.3d 338 (6th Cir. 2006): "This Court has

consistently held that, for Section 2254 cases, the *Sullivan* standard does not apply to claims of

conflict of interest other than multiple concurrent representation; in such cases, including successive

representation, the *Strickland* standard applies." *Id.* at 351 (internal citations omitted). The state

---

[2] Bentley contends that AEDPA standards do not apply to his claims. This is plainly incorrect. *See Williams v. Bagley*, 380 F.3d 932, 943 (6th Cir. 2004).

court properly rejected Bentley's argument that the presumed prejudice rule should apply to his claims.

Moreover, we find no error in the state court's conclusion that there was no actual conflict between Bentley and Howard. Howard testified at the evidentiary hearing that she did not believe there was a conflict but advised Bentley of the facts out of an abundance of caution. Howard admitted that Bentley's representation caused family tension because her son believed Bentley to be guilty of murder. But she also clearly stated that her son's opinions did not affect her professional judgment as trial counsel. The court credited Howard's testimony that her son's feelings did not burden her with a professional conflict of interest. The state court also noted the many efforts Howard undertook in Bentley's defense and concluded that her representation was zealous and conflict-free. We agree.

Bentley must therefore establish that Howard's performance was deficient and that his defense was prejudiced to establish an ineffective assistance of counsel claim under *Strickland*.

B.      Howard's Failure to Call Her Son as an Adverse Witness.

It is undisputed that Howard's son James was at Marlowe's bar the night Elswick was shot. James was at Elswick's side when he died although James did not witness the shooting. Howard went to the jail the night of the killing after James called her to tell her about it. Howard promptly told Bentley about James' potential involvement. Bentley signed a written waiver of any possible conflict that night at the jail. At Bentley's arraignment, Howard informed the trial court about her son's relationship with Elswick, stating that she "probably" or "possibly" might call him as a hostile witness during the trial. Bentley affirmed his waiver of any possible conflict at the arraignment and again under questioning from the trial judge just before his trial started. After his sentence was

imposed, Bentley filed a complaint against Howard with the state bar. That complaint was dismissed for lack of merit.

Howard testified at Bentley's evidentiary hearing that she was afraid James would have said anything to send Bentley to prison for the rest of his life. James believed that Bentley intentionally killed Elswick. Bentley contends, however, that James should have been a witness because he would have admitted that Bentley and Elswick were friends, and also would have testified about things he "may have known" but did not disclose to his mother.

The state court concluded that Bentley knowingly and intelligently waived any potential conflict on three separate occasions. The Kentucky Court of Appeals agreed, finding no evidence in the record to suggest that Bentley did not understand the nature of the potential conflict or the effect of his waiver. The Court of Appeals also noted that Howard approached Bentley's defense with vigor and zeal, and that his accidental-shooting defense was fully presented to the jury. The Court of Appeals found that Bentley did not show a "reasonable probability" that the outcome of his trial would have been different if he had been represented by a different lawyer.

The district court below found that the state courts properly applied the *Strickland* test. The court rejected Bentley's assertions about what James "might" have testified because they were based on mere speculation. We agree that the Kentucky courts properly applied *Strickland* to reject Bentley's claim. "Pure speculation" about whether the outcome might have been different is insufficient to establish prejudice. *See Baze v. Parker*, 371 F.3d 310, 322 (6th Cir. 2004).

C. Howard's Failure to Call Additional Witnesses and Cross-Examine Newsome.

Bentley argues that Howard failed to call Desi Mullins, who would have testified that Bentley was carrying the gun because he had been threatened by someone else. He also contends that

Howard failed to effectively cross-examine Janet Newsome about her statement to the police that she did not hear any "fighting words" between Bentley and Elswick. These arguments were presented to the state court and included in the certificate of appealability. We conclude, however, that these claims lack merit. Bentley did not contest that he fired the shots that night. The particular reason he had a gun was not crucial to a "wanton murder" conviction under Kentucky law. *See Elliott v. Commonwealth*, 976 S.W.2d 416 (Sup. Ct. Ky. 1998), noting that under the Kentucky penal code, "Wanton murder requires proof that the defendant 'caused the death of another person' by 'wantonly engaging in conduct' creating a grave risk of death to another person under circumstances manifesting extreme indifference to human life." *Id*. at 418 (internal citation omitted).

Bentley also argues that Howard's cross-examination of Newsome was constitutionally ineffective, because she asked only one question. If this was error at all, it does not rise to the level of ineffective assistance. In *Strickland*, the Supreme Court stated that our review of counsel's strategy and trial tactics should be "highly deferential" and should avoid second-guessing. *Strickland*, 466 U.S. at 689. Bentley has not articulated a basis to conclude that Howard's choice to limit Newsome's cross-examination was objectively unreasonable, or outside the realm of reasonable professional judgments. Moreover, as noted above, wanton murder does not require proof that Bentley was angry at Elswick; the lack of "fighting words" between them prior to the shooting does not compel a conclusion that Bentley is not guilty of wanton murder.

III.

For these reasons, we affirm the judgment of the district court dismissing Bentley's petition.