# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: APRIL 28, 2022
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0486-MR

SCOTT D. SEAMAN                                           APPELLANT

                 ON APPEAL FROM JEFFERSON CIRCUIT COURT
V.                 HONORABLE JUDITH MCDONALD-BURKMAN, JUDGE
                             NO. 17-CR-1875

COMMONWEALTH OF KENTUCKY                        APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

Scott Seaman (Seaman) was found guilty of the murder of Michael Dow (Dow). The jury convicted Seaman of murder and recommended a sentence of forty years. The court followed this recommendation. He now appeals the resulting sentence as a matter of right.[1] After review, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 11, 2017, Thomas Phillips (Thomas) drove his sister, Amanda Phillips (Amanda), and Seaman to meet Dow near Dow's mother's home, so Dow could give them marijuana.[2] Amanda was in the front passenger seat, and Seaman was in the rear passenger side seat of the vehicle. The trio found

---

[1] Ky. Const. § 110(2)(b).

[2] For clarity, we refer to the Phillips siblings by their given names rather than their family name.

Dow walking down the street near Dow's mother's house and approached him in the vehicle. Amanda handed Dow a bag of marijuana. Dow threw the bag of marijuana back at Amanda, and said, "Bitch, throw it on the scale." Thomas and Amanda, who were friends with Dow, knew he was joking. Apparently, Seaman did not realize it was a joke, so he rolled down the back window and confronted Dow by saying: "Who are you calling a bitch?" The two argued.

Thomas testified that Seaman attempted to exit the car, but Dow held the door closed from the outside after moving toward the back end of the vehicle. Thomas said that Dow never attempted to enter the car or climb through the window, but he heard Seaman fire the gun twice through the open back window, and saw that Dow was shot once in the side and once in the chest. Thomas saw Dow stumble back from the car. Seaman turned the gun toward Amanda and told Thomas to drive or he would shoot Amanda. Thomas then drove away. Thomas also testified that Seaman had substance use issues.

Amanda also testified at trial. She stated that the two argued, Seaman pulled out a gun and then the two struggled over it. Dow never attempted to enter the car or climb through the window. The gun went off twice, then Seaman pointed the gun toward the front of the car and told Thomas to drive. Thomas drove away. After Seaman shot Dow, Amanda was too afraid to call 9-1-1. Amanda testified that Seaman had mental health and substance use issues.

Dow died from the gunshot wound after lying on the side of the street. The medical examiner was uncertain how long Dow lived after being shot, but in his opinion, because one of the bullets penetrated Dow's lungs and aorta, no amount of medical intervention would have prevented his death. The fatal shot entered Dow's back and exited his right anterior side and then traveled through his right arm.

Counsel for Seaman argued at trial that the shooting was an accident, or, in the alternative, Seaman acted in self-defense. The jury found Seaman guilty and recommended a sentence of forty years, which the trial court accepted. This appeal followed. Additional facts are discussed below as necessary.

## II.    ANALYSIS

Seaman alleges four errors on appeal. First, that the trial court erred by failing to instruct the jury on self-protection. Second, that the trial court erred in allowing the Commonwealth to introduce threats allegedly made by Seaman after the offense. Third, that the trial court erred in allowing Amanda and Thomas to testify that Seaman abused substances. Fourth, the trial court erred by failing to require a unanimous verdict when it included both intentional and wanton murder in the same instruction.

### 1. The trial court did not err in refusing to instruct the jury on self-protection.

Seaman argues that the trial court committed reversible error by not instructing the jury on self-protection and imperfect self-protection as

3

affirmative defenses to murder.[3]

The jury instructions closely followed the model instructions regarding self-protection set out by this Court in *Commonwealth v. Hager*.[4] However, because the trial court made the determination that there was not sufficient evidence to warrant a self-protection instruction, the *Hager* self-protection instruction subsection was not included in the set of instructions submitted to the jury. Therefore, the question is whether the trial court erred by determining that there was insufficient evidence to warrant a self-protection instruction.

It is "the duty of the court to instruct the jury in writing on the law of the case, which instructions shall be read to the jury prior to the closing summations of counsel."[5] Courts must give jury instructions to a lesser included charge, including defenses, only if there is sufficient evidence to support that charge.[6] Therefore, a trial court does not commit error if it refuses to provide an instruction proffered by a party that is not supported by testimony which would allow a reasonable juror to conclude that the defense applies.[7] When a party alleges that a trial court "fail[ed] to give a warranted instruction," the appellate court "review[s] the decision for an abuse of

---

[3] This issue is preserved. Kentucky Rule of Criminal Procedure (RCr) 9.22.

[4] 41 S.W.3d 828, 844-47 (Ky. 2001).

[5] RCr 9.54.

[6] *See Reed v. Commonwealth*, 738 S.W.2d 818, 822 (Ky. 1987); and *Grimes v. McAnulty*, 957 S.W.2d 223, 226 (Ky. 1997) (citing *Brown v. Commonwealth*, 555 S.W.2d 252, 257 (Ky. 1977)).

[7] *Id.*

4

discretion."[8] "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles."[9]

A defendant is justified in using deadly physical force "only when the defendant believes that such force is necessary to protect himself against death . . . [or] serious physical injury . . . ."[10] Under KRS 503.070(2), deadly physical force to protect another person is justified if "[t]he defendant believes that such force is necessary to protect a third person against imminent death . . . [or] serious physical injury" and "[u]nder the circumstances as they actually exist, the person whom he seeks to protect would himself have been justified . . . in using such protection."

KRS 503.085(1) provides in pertinent part that:

> [a] person who uses force as permitted in KRS 503.050, 503.055, 503.070, and 503.080 is justified in using such force and is immune from criminal prosecution and civil action for the use of such force [. . .]. As used in this subsection, the term "criminal prosecution" includes arresting, detaining in custody, and charging or prosecuting the defendant.

The relevant portions of KRS 503.050 provide that:

> (1) The use of physical force by a defendant upon another person is justifiable when the defendant believes that such force is necessary to protect himself against the use or imminent use of unlawful physical force by the other person.

---

[8] *Commonwealth v. Caudill*, 540 S.W.3d 364, 367 (Ky. 2018).

[9] *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

[10] Kentucky Revised Statute (KRS) 503.050(2).

(2) The use of deadly physical force by a defendant upon another person is justifiable under subsection (1) only when the defendant believes that such force is necessary to protect himself against death, serious physical injury, kidnapping, sexual intercourse compelled by force or threat, felony involving the use of force, or under those circumstances permitted pursuant to KRS 503.055.

[. . .]

(4) A person does not have a duty to retreat prior to the use of deadly physical force.

The relevant portion of KRS 503.055(3) states that:

[a] person who is not engaged in an unlawful activity and who is attacked in any other place where he or she has a right to be has no duty to retreat and has the right to stand his or her ground and meet force with force, including deadly force, if he or she reasonably believes it is necessary to do so to prevent death or great bodily harm to himself or herself or another or to prevent the commission of a felony involving the use of force.

As a general rule, "it is the whole circumstances which surround the incident that must be considered by the trial judge in deciding whether an instruction on self-defense is proper."[11] In the case before us, the jury heard the following evidence: that Dow joked with Amanda about the amount of marijuana in the bag; that Amanda and Thomas knew Dow was joking; that Seaman rolled the rear passenger window down and argued with Dow because he did not think Dow was joking; that Dow approached the rear passenger side of the vehicle where Seaman was sitting, and leaned against the car to hold the

---

[11] *Sutton v. Commonwealth*, 627 S.W.3d 836, 853 (Ky. 2021) (quoting *Downs v. Commonwealth*, 620 S.W.3d 604 (Ky. 2020)).

door closed and prevent Seaman from getting out of the car; that Dow attempted to get the gun away from Seaman before Seaman shot him twice; and that Seaman pointed the gun toward the front of the vehicle and told Thomas to drive or he would shoot Amanda.

Seaman never indicated he saw Dow holding a weapon or otherwise stated that he believed that he was in danger of death or serious physical injury. Dow never made a threat against Seaman, Amanda, or Thomas. Rather, Seaman was offended because he did not believe Dow was joking. The evidence must support the defendant's belief that deadly force "is necessary to protect himself against death [or] serious physical injury."[12] Taking offense to an abrasive, but otherwise harmless, statement is not sufficient to justify murder, or for any person to either subjectively or objectively believe that deadly force is necessary to protect against death or serious physical injury.

Therefore, even fully accepting Seaman's version of events, none of Dow's actions necessitated the use of deadly force sufficient to find the trial court acted in a way that was arbitrary, unreasonable, unfair, or unsupported by sound legal principles in denying the self-protection instruction. As a result, it was not an abuse of the trial court's discretion to deny Seaman's request to instruct the jury on self-protection.

Imperfect self-protection is codified in KRS 503 120(1), which states that:

> When the defendant believes that the use of force upon
> or toward the person of another is necessary for any of

---

[12] KRS 503.050(2).

7

the purposes for which such belief would establish a justification under KRS 503.050 to 503.110, but the defendant is wanton or reckless in believing the use of any force, or the degree of force used, to be necessary or in acquiring or failing to acquire any knowledge or belief which is material to the justifiability of his use of force, the justification afforded by those sections is unavailable. In a prosecution for an offense for which wantonness or recklessness, as the case may be, suffices to establish culpability.

Therefore,

[u]nder KRS 503.120, a defendant cannot shield himself from prosecution if he was unreasonable in his belief or if an innocent third party was harmed. However, if a defendant was wanton or reckless in his belief that force was necessary for self-defense, he would be entitled to an instruction on a lesser-included offense under a theory of imperfect self-defense. Accordingly, "[i]f the charged offense is intentional murder or first-degree manslaughter, a wantonly held belief in the need for self-protection reduces the offense to second-degree manslaughter and a recklessly held belief reduces the offense to reckless homicide."[13]

As stated above, there was no evidence introduced at trial that Seaman held a subjective belief that deadly force was necessary to protect himself against death or serious physical injury, beyond a blanket statement he made in a jailhouse call that he was acting in self-defense. Absent that subjective belief, there can be no justification under a theory of self-protection, whether perfect or imperfect.

---

[13] *Gribbins v. Commonwealth*, 483 S.W.3d 370, 374 (Ky. 2016) (quoting *Elliott v. Commonwealth*, 976 S.W.2d 416 (Ky. 1998)).

## 2. The trial court did not err in allowing the Commonwealth to introduce threats allegedly made by Seaman after the offense.

Seaman next argues that Thomas' testimony—that Seaman told him that if the police showed up to arrest him, he would kill Amanda, and that Thomas was worried about his sister because of the things that Seaman told him he would do to her in the weeks following the murder of Dow—was not relevant pursuant to Kentucky Rules of Evidence (KRE) 401 and 403 because those statements did not make the fact that he committed the offense more or less likely.[14]

All relevant evidence is admissible pursuant to KRE 402. Under KRE 401, relevant evidence is that which has "***any*** tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[15] "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."[16] "The task of weighing the probative value and undue prejudice of proffered evidence is inherently factual and, therefore, within the discretion of the trial court."[17] We review a trial court's determination regarding the admissibility of evidence under the abuse of

---

[14] This issue was preserved by contemporaneous objection. RCr 9.22.

[15] Emphasis added.

[16] KRE 403.

[17] *Ross v. Commonwealth*, 455 S.W.3d 899, 910 (Ky. 2015) (citation omitted).

9

discretion standard.[18]  "The test for abuse of discretion is whether the trial

judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound

legal principles."[19]  And, "in reviewing the trial judge's balancing under KRE

403, the appellate court must view the evidence in the light most favorable to

its proponent, giving the evidence its maximum reasonable probative force and

its minimum reasonable prejudicial value."[20]

"[T]he Kentucky Rules of Evidence are 'intended to be flexible enough to

permit the prosecution to present a complete, un-fragmented, un-artificial

picture of the crime committed by the defendant, including necessary context,

background and perspective.'"[21]

We have previously held that "any conduct of the accused inconsistent

with his innocence is admissible in evidence."[22]  More specifically, "[a]ny

attempt to suppress a witness' testimony by the accused, whether by

persuasion, bribery, or threat, or to induce a witness not to appear at the trial

or to swear falsely, or to interfere with the processes of the court is evidence

tending to show guilt."[23]  Accordingly, the "use of prior bad acts to prove

---

[18] *Simpson v. Commonwealth*, 889 S.W.2d 781, 783 (Ky. 1994).

[19] *English*, 993 S.W.2d at 945.

[20] *McLemore v. Commonwealth*, 590 S.W.3d 229, 234 (Ky. 2019) (quoting *Major v. Commonwealth*, 177 S.W.3d 700, 707 (Ky. 2005)).

[21] *Id.* at 235 (quoting *Major*, 177 S.W.3d at 707).

[22] *Collier v. Commonwealth*, 339 S.W.2d 167, 168 (Ky. 1960).

[23] *Foley v. Commonwealth*, 942 S.W.2d 876, 887 (Ky. 1996) (citing *Collier v. Commonwealth*, 339 S.W.2d 167 (Ky. 1960)).

consciousness of guilt, which includes threats to kill witnesses, is an acceptable practice."[24]

Here, Seaman told Thomas that if the police showed up to arrest him, he would kill Amanda. In other words, Seaman threatened to kill Amanda—a witness to the killing of Dow—if either she or Thomas cooperated with the police's investigation of Seaman's involvement. That Seaman made the statements in the weeks following the murder is of no issue: of course, his threats to silence a witness would necessarily have to follow the actual commission of the crime the witness saw him commit. Consequently, Seaman's threat to kill Amanda was admissible because it tended to prove Seaman's guilt as well as his consciousness of that guilt.

With that in mind, we refuse to second-guess the trial court's determination that this evidence was, indeed, relevant and probative enough to be admissible. Therefore, we hold that the trial court did not abuse its discretion by allowing the Commonwealth to introduce evidence of the threats made by Seaman against Amanda after the offense.

## 3. Whether the trial court erred in allowing Amanda and Thomas to testify that Seaman abused substances and had mental health issues was unpreserved. Therefore, we decline review.

Seaman next argues that the trial court erred by allowing Amanda and Thomas to testify that he had mental health and substance use issues. The

---

[24] *Gray v. Commonwealth*, 480 S.W.3d 253, 270-71 (Ky. 2016) (citing *Foley v. Commonwealth*, 942 S.W.2d 876, 887 (Ky. 1996)).

11

heart of Seaman's contention is KRE 404's prohibition against the admission of improper character evidence barred the testimony from being admitted.

### a. Preservation

Seaman avers that this issue was preserved for appellate review by a pre-trial motion in limine, as well as a contemporaneous objection by counsel during the Commonwealth's examination of Amanda. However, the pre-trial motion in limine which Seaman points to in the record had nothing whatsoever to do with substance use, though it does reference KRE 404. That motion pertained exclusively to his statements made during an interview with a detective while in custody. Further, during a bench conference concerning the Commonwealth's examination of Amanda, counsel for Seaman did not object: she stated that she "had concerns" that the questioning could "potentially" raise a KRE 404 issue. The Commonwealth responded, "if you're okay with me asking if he has a drug problem, or something like that . . . ." Defense Counsel responded, "I think if the question was, 'are you aware of any drug use?' or something like that, I think . . . ." The trial court responded, "I agree. You can do that." There was no similar discussion and certainly no objection was raised when Thomas was testifying as to the same topic.

With the foregoing in mind, we determine that this issue is unpreserved for appellate review.[25] KRE 103(d) allows an alleged error to be preserved for appellate review by "[a] motion in limine resolved by order of record." And,

---

[25] RCr 9.22.

because Seaman did not make a contemporaneous objection to the evidence when it was admitted at trial, especially in light of the exchange at the bench conference regarding the extent to which the Commonwealth could inquire about the substance use issues, the argument is not preserved. Because the motion in limine is not germane to the testimony Seaman now takes issue with, and defense counsel did not object to this testimony, we conclude that this alleged error was unpreserved.

### b. Because Seaman did not request or brief palpable error review, we decline review.

RCr 10.26 allows an appellate court to review an unpreserved error if the error is palpable and it resulted in manifest injustice. However, "[a]bsent extreme circumstances amounting to a substantial miscarriage of justice, an appellate court will not engage in palpable error review pursuant to RCr 10.26 unless such a request is made and briefed by the appellant."[26] Seaman did not request review for palpable error. "Ordinarily, when an issue is unpreserved at the trial court, this Court will not review it unless a request for palpable error review under RCr 10.26 is made and briefed by the appellant."[27]

We do not find any "extreme circumstances amounting to a substantial miscarriage of justice."[28] And, no request, or mention, for that matter, for

---

[26] *Shepherd v. Commonwealth*, 251 S.W.3d 309, 316 (Ky. 2008).

[27] *Webster v. Commonwealth*, 438 S.W.3d 321, 325 (Ky. 2014) (citing *Shepherd*, 251 S.W.3d at 316).

[28] RCr 10.26.

palpable error review is insufficient to invoke that review. As such, we decline

to review this alleged error.

## 4. The trial court did not fail to require a unanimous verdict when it included both intentional and wanton murder in the same instruction.

Finally, Seaman argues that the trial court erred by giving the jury a

combination instruction which permitted him to be convicted of either

intentional or wanton murder, when no evidence supported giving the wanton

part of the instruction.

The instruction states in pertinent part as follows:

INSTRUCTION NO. 1 – MURDER

You will find the defendant, SCOTT D. SEAMAN, guilty under this instruction if, and only if, you believe from the evidence beyond a reasonable doubt, all of the following:

(a) That in this county on or about the 11th day of June, 2017, he killed Michael Dow by shooting him with a firearm;

AND

(b) That in so doing, he caused the death of Michael Dow intentionally, as that term is defined in Instruction No. 4.

OR

(b) He was wantonly engaging in conduct which created a grave risk of death to another and thereby caused the death of Michael Dow under

circumstances manifesting an extreme indifference to human life.

14

Seaman was entitled to a unanimous jury verdict under Section 7 of the Kentucky Constitution.[29] A combination instruction does not violate the right to a unanimous verdict if there is sufficient evidence to convict under both theories of culpability and the jurors are satisfied beyond a reasonable doubt that the defendant is guilty under one of the theories.[30]

Seaman does not take issue with the intentional murder instruction, but instead argues that there was insufficient proof to establish that he wantonly murdered Dow. Namely, that the evidence adduced at trial could support only one of three theories: that he either shot Dow by accident, in self-defense, or intentionally.

KRS 501.020(3) supplies the applicable definition of wantonness:

> A person acts wantonly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.

Seaman seems to argue that shooting an unarmed man at near point blank range, and then instructing Thomas—under threat of Seaman shooting Amanda—to drive away as that unarmed man lay bleeding on the side of the road did not: (1) clearly pose a substantial and unjustifiable risk of killing

---

[29] *Hayes v. Commonwealth*, 625 S.W.2d 583, 584 (Ky. 1981); *Wells v. Commonwealth*, 561 S.W.2d 85, 87 (Ky. 1978).

[30] *Travis v. Commonwealth*, 327 S.W.3d 456, 459–60 (Ky. 2010).

15

another person, and that, (2) he did not show an extreme indifference to the possibility of killing another person such that a reasonable juror could find that he engaged in a gross deviation from the standard of conduct that a reasonable person would observe in the situation. This is, plainly, without merit. A reasonable juror could find under the circumstances that Seaman committed either wanton murder or intentional beyond a reasonable doubt. It was not error for the trial court to combine the instructions.[31] As a result, the trial court did not fail to require a unanimous verdict when it included both intentional and wanton murder in the same instruction.

---

[31] Though Seaman asserts this issue was preserved, the record reflects that the trial court bifurcated the instruction as requested by defense counsel:

> **Defense Counsel:** The one thing, judge, on the murder count, if I'm reading this correctly, and I think I am. I'm objecting to both theories—the wanton and intentional—being in the same instruction. If the Court is going to instruct on both, I believe that it would be cleaner, from a unanimous verdict aspect, to have them completely separated. Have an instruction where . . .
>
> **Court:** 1(a), 1(b), something like that?
>
> **Defense Counsel:** Something like that, where we separate them. Wanton is complicated alone. It's a weird instruction. I'd actually ask wanton not be instructed at all.
>
> **Court:** Is it reversible error not to?
>
> **Defense Counsel:** I don't know the answer to that right off the top of my head.

Therefore, though defense counsel objected to the combination instruction, the trial court ultimately did what was asked of it and separated the instruction to counsel's satisfaction. But, because we hold it was no error at all for the trial court to include the combination instruction, we need not determine the issue of preservation or whether the error was harmless.

16

### III.   CONCLUSION

For the foregoing reasons, we affirm the Jefferson County Circuit Court.

All sitting.  All concur.


COUNSEL FOR APPELLANT:

Joseph Rob Eggert
Michael Lawrence Goodwin

COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Courtney Elizabeth Albini
Assistant Solicitor General
Office of the Attorney General